UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

In re COMVERSE TECHNOLOGY, INC.            <u>MEMORANDUM AND ORDER</u>
SECURITIES LITIGATION

                                                       06-CV-1825 (NGG)(RER)

-------------------------------------------------------------------X

GARAUFIS, United States District Judge.

       By Memorandum and Order dated September 27, 2006 ("Judge Reyes's Order"), Magistrate Judge Ramon E. Reyes selected Plaintiff Plumbers and Pipefitters National Pension Fund ("P&P"), represented by the law firm of Lerach Coughlin Stoia Geller Rudman & Robbins LLP ("Lerach Coughlin"), as lead plaintiff in this consolidated action under the Private Securities Litigation Reform Act ("PSLRA") of 1995, Pub. L. 104-67, 109 Stat. 737 (1995). Plaintiffs The Menorah Insurance Co. Ltd. and Mivtachim Pension Funds Ltd. (collectively, the "Menorah Group"), represented by Pomerantz Haudek Block Grossman & Gross LLP ("Pomerantz Haudek"), object to this decision pursuant to Fed. R. Civ. P. 72(a), and ask this court to vacate Judge Reyes's Order and appoint the Menorah Group lead plaintiff. The court has considered thoroughly Judge Reyes's Order, the Menorah Group's objections, P&P's response, and the arguments advanced by the parties at oral argument on January 5, 2007.

       For the reasons set forth below, the court VACATES Judge Reyes's Order, and APPOINTS the Menorah Group and Pomerantz Haudek to lead this consolidated action.

**I.     FACTUAL BACKGROUND**

       This case arises out of the allegedly unlawful granting of stock options by Comverse Technology, Inc. ("Comverse") to its senior executives. On March 14, 2006, Comverse announced the creation of a special committee of its Board of Directors to review matters relating

to the company's stock option grants. (Caifa Complaint, No. 06 Civ. 1825 (NGG) (E.D.N.Y. Apr. 19, 2006), Docket Entry No. 1, ¶ 36.) On April 17, 2006, Comverse announced that it would be restating its financial results for fiscal years 2001 through 2005, due to the backdating of stock option grants during that period. (Id. ¶ 38.) On April 19, 2006, Plaintiff Anthony Caifa filed a class action private securities complaint against Comverse alleging violations of Sections 10(b) and 20(a) of the Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t, and Rule 10b-5, 17 C.F.R. § 240.10b-5, promulgated thereunder. (Id. ¶¶ 45-53.)

In the ensuing months, three members of the plaintiff class moved the court to be appointed lead plaintiff in the consolidated private securities action, 06-CV-1825, under the PSLRA. P&P moved to be appointed lead plaintiff and to have its counsel, Lerach Coughlin, appointed lead counsel. The Menorah Group moved to be appointed lead plaintiff and to have its counsel, Pomerantz Haudek, appointed lead counsel. And Leumi-Pia Trust Fund Management Co. Ltd. ("Leumi-Pia") and Doris, Jacques, and Roger Gould ("the Goulds") moved to be appointed lead plaintiffs, and to have their respective counsel, Labaton Sucharow & Fudoff LLP and Paskowitz & Associates ("Labaton/Paskowitz"), appointed co-lead counsel.

Pursuant to Rule 72(a), this court referred the motions to Magistrate Judge Reyes for a decision. (Order dated August 16, 2006, at 2.) After briefing and oral argument, Judge Reyes issued a Memorandum and Order on September 27, 2006, appointing P&P to lead this consolidated action.[1] The Menorah Group has objected to Judge Reyes's Order and asks this court to vacate that decision.

---

[1] On September 28, 2006, Judge Reyes issued a separate order denying the two competing motions (filed by the Menorah Group and Leumi-Pia) to be appointed lead plaintiff.

2

## II. STANDARD OF REVIEW

Under Title 28 U.S.C. § 636(b)(1)(A), a district court can refer a nondispositive pretrial matter to a magistrate judge for a decision. See also Fed. R. Civ. P. 72(a). Under that same Rule, "a party may serve and file objections to the order" within "10 days after being served with a copy of the magistrate judge's order." Id. The Menorah Group timely objected to Judge Reyes's Order on October 12, 2006.

If a party objects to a magistrate judge's order in a nondispositive pretrial matter, "[t]he district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); see also 28 U.S.C. § 636(b)(1)(A) (the "judge of the court may reconsider any [nondispositive] pretrial matter . . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.").

A magistrate judge's findings may be considered "clearly erroneous" where "'on the entire evidence,' the [district court] is 'left with the definite and firm conviction that a mistake has been committed.'" Easley v. Cromartie, 532 U.S. 234, 243 (2001) (quoting United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948)). An order is contrary to law "when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." Ri Sau Kuen Chan v. NYU Downtown Hosp., 2004 U.S. Dist. LEXIS 16751, at **9-11 (S.D.N.Y. 2004) (citing and quoting Catskill Dev., L.L.C. v. Park Place Entm't Corp., 2006 F.R.D. 78, 86 (S.D.N.Y. 2002)).

## III. DISCUSSION

### A. Procedure under the PSLRA

In his order, Judge Reyes properly delineated the procedure for appointing a lead plaintiff under the PSLRA. The PSLRA requires that the court select "the member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interest of class members." 15 U.S.C. § 78u-4(a)(3)(B)(I). In making that determination, the statute designates three rebuttable presumptions that guide the court's effort to identify the most adequate plaintiff. Id. Courts routinely consider each of those presumptions in turn.

Under the first presumption, the most adequate plaintiff is the plaintiff "that filed the complaint or timely made a motion in response to a notice [under Section 78u-4(a)(3)(A)(I)]." Id. § 78u-4(a)(3)(B)(I). Since all three competing plaintiffs timely filed complaints or motions in this case, the court proceeds to consider the second presumption.

The second presumption provides that the plaintiff who, "in the determination of the court, has the 'largest financial interest' in the relief sought by the class" is considered the most adequate class representative. A class member who meets this requirement is presumptively the lead plaintiff, subject to rebuttal from other class members that the presumptive lead plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." Id. § 78u-4(a)(3)(B)(iii)(II)(aa)-(bb). The decision in this case turns on the court's determination of which plaintiff has the "largest financial interest" in the relief sought by the class.

The PSLRA does not specify the method of calculating which plaintiff has the "largest financial interest." Courts have typically considered the following four factors, known as the

"Olsten-Lax" factors, to determine who has the greatest financial interest:

(1) the number of shares purchased during the class period;

(2) the net number of shares purchased during the class period (*i.e.*, shares purchased during and retained at the end of the class period);

(3) the total net funds expended during the class period; and

(4) the approximate loss suffered during the class period.

In re Olsten Corp. Sec. Litig., 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998) (citing Lax v. First Merchants Acceptance Corp., No. 97-CV-2715, 1997 WL 461036, *5 (N.D. Ill. Aug. 11, 1997)). Most courts consider the fourth factor, the approximate loss a plaintiff suffered during the class period, to be most influential in identifying the plaintiff with the largest financial interest. See, e.g., Weiss v. Friedman, No. 05 Civ. 4617 (RJH), 2006 WL 197036, *3 (S.D.N.Y. Jan. 25, 2006).

**B.  Judge Reyes's Order**

Judge Reyes found that P&P has the greatest financial interest in this action, as measured by three of the four Olsten-Lax factors (shares purchased, net funds expended, and approximate loss), including the critical approximate loss factor.[2] (Judge Reyes's Order at 3-4.) Specifically, Judge Reyes found that P&P had purchased 534,471 shares that resulted in approximate losses totaling $2,933,643.21, far exceeding the Menorah Group's claimed loss of $343,202.50 on its 172,500 shares. Having determined that P&P carried the greatest financial interest of the competing plaintiffs, Judge Reyes selected P&P as lead plaintiff in this consolidated action in accordance with the PSLRA's rebuttable presumption in favor of a plaintiff with the greatest financial interest. (Id.)

---

[2] Judge Reyes found that P&P was in a "virtual tie" with the Menorah Group in applying the second Olsten-Lax factor, net number of shares purchased. (Judge Reyes's Order at 4.)

**C. The Menorah Group's Objection**

The Menorah Group objects, challenging Judge Reyes's core finding that P&P suffered $2.93 million in losses on its 534,471 shares. The Menorah Group argues that Judge Reyes erred by improperly including in his calculation losses for which P&P cannot recover in this action. According to the Menorah Group, most of P&P's losses resulted from "in-and-out" transactions, which took place during the class period, but before the misconduct identified in the complaint was ever revealed to the public.[3] Under the Supreme Court's holding in Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336 (2005), the Menorah Group argues, none of the losses from those transactions are recoverable in this litigation. If that is correct, the Menorah Group calculates that only 172,156 of P&P's shares (those shares retained through the period of the alleged corrective disclosures) are relevant to the greatest financial interest calculation; and with respect to those shares, P&P did not suffer a $2.93 million loss, but instead actually realized a $132,722 gain. (Menorah Group Br. at 4, 13 (citing Declaration of Kenneth E. Kotz, filed in support of the Menorah Group's Memorandum of Law in Further Support, Docket Entry No. 19 ("Kotz Declaration"), ¶¶ 33-34).) If the court agreed, the Menorah Group's $343,202 loss would represent the largest financial interest in this litigation, and under the PSLRA standard, the Menorah Group (and not P&P) should be appointed lead plaintiff in this action.[4]

Reviewing Judge Reyes's Order for clear error or a finding that is contrary to law, this court must consider the extent to which loss causation, and the Supreme Court's Dura holding, should be taken into account in determining financial interest for purposes of the PSLRA.

---

[3] Both parties agree that the complaint does not contain any allegations of pre-March 14, 2006 disclosures to the public.

[4] The third competing plaintiff, Leumi-Pia, did not object to Judge Reyes's Order denying its lead plaintiff motion, and therefore this court does not consider Leumi-Pia's candidacy for lead plaintiff in the context of this objection.

D. **Analysis**

1. **P&P's Losses**

   a. *Recoverable Losses*

In its motion papers, P&P alleges that it sustained $2.93 million in losses on transactions relating to 534,471 shares. (See P&P Br. (June 19, 2006), at 2 (citing Declaration of David A. Rosenfeld ("Rosenfeld Declaration")).) In urging the court to consider only a portion of those asserted losses, the Menorah Group argues that most of P&P's losses cannot be recovered in this litigation, because those losses were suffered before the alleged misconduct was revealed to the public, and thus could not have been caused by the misconduct at issue in this action. (Menorah Group Br. at 3-4.) In response, P&P argues that the court should take P&P's allegations at face value, and should appoint it lead plaintiff on the basis of its asserted $2.93 million loss. Underlying P&P's position is the premise that, at the pleading stage of a litigation, a court cannot, and should not, aim to determine which losses will factor into a party's ultimate recovery.

   b. *Loss Causation*

In Dura, the Supreme Court held that plaintiffs can recover in fraud-on-the-market cases only if a specific loss was proximately caused by a defendant's misrepresentations. 544 U.S. at 344-47. In so ruling, the Court held that a plaintiff cannot prove loss causation merely by establishing that a defendant's misconduct artificially inflated the price of the target company's stock on the date the plaintiff purchased its shares. Instead, a plaintiff must also prove that the company's stock price later declined (and thus caused plaintiff's shares to be worth less) immediately following a disclosure of the alleged misconduct to the public. Id.; see also Lentell v. Merrill Lynch & Co., Inc., 396 F.3d 161, 173 (2d Cir. 2005) (holding that to establish loss causation, a plaintiff must allege that the defendant's misstatement or omission concealed

7

something from the market that negatively affected the value of the security when disclosed).

In short, it is clear that under Dura and its progeny, any losses that P&P may have incurred before Comverse's misconduct was ever disclosed to the public are not recoverable, because those losses cannot be proximately linked to the misconduct at issue in this litigation. While the Dura Court decided a motion to dismiss, and not a lead plaintiff motion, the logical outgrowth of that holding is that any such losses must not be considered in the recoverable losses calculation that courts engage in when selecting a lead plaintiff. See Kops v. NVE Corp., 2006 U.S. Dist. LEXIS 49713 (D. Minn. July 17, 2006) (refusing to credit competing plaintiff's in-and-out losses, despite the allegation that a partial disclosure occurred before some of those sales).

Judge Reyes declined to consider the implications of loss causation on P&P's alleged losses. Instead, he held that loss causation was a factual issue that should not be considered at this stage of the litigation. (Judge Reyes's Order at 7-8 (citing In re Tyco Int'l Ltd. MDL, 236 F.R.D. 62, 71 (D.N.H. 2006)).) Observing that Dura does not address, much less formulate, precise standards for pleading requirements, Judge Reyes concluded that it is therefore "simply too early in the litigation to exclude from the Court's 'largest financial interest' calculation losses that may have been caused by additional disclosures or other events which may have caused the 'relevant truth [about the fraud] to leak out.'" (Judge Reyes's Order at 8.) He reasoned that since P&P had satisfied the liberal pleading standard of the Federal Rules of Civil Procedure by stating a claim and identifying loss causation for some of its losses, parsing loss causation for each of P&P's claimed losses in further detail would inappropriately implicate factual issues.[5]

---

[5] Judge Reyes expressed particular concern that the law does not preclude P&P from "later identif[ying] additional disclosures or other events which may have caused the 'relevant truth [about the fraud] to leak out.'" (Judge Reyes's Order at 8.)

8

This court disagrees. Although Judge Reyes is correct in noting that loss causation may raise factual issues, it is clear that the <u>Dura</u> Court did not hesitate to consider loss causation on the pleadings when faced with a pre-discovery motion. Nor have any of the other dozens of courts that have dismissed cases or decided motions at the pleading stage on loss causation grounds. See, e.g., <u>Huntz v. Enzo Biochem, Inc.</u>, 2006 WL 3591431, *12 (S.D.N.Y. 2006) (dismissing complaint for failure to adequately plead loss causation); <u>In re Veeco Instr., Inc. Sec. Litig.</u>, 233 F.R.D. 330, 333-34 (S.D.N.Y. 2005) (considering plaintiff's failure to demonstrate loss causation for its losses as a basis on which to disqualify its candidacy for lead plaintiff); <u>Kops</u>, 2006 U.S. Dist. LEXIS 49713 (D. Minn. July 17, 2006) (discounting in-and-out losses from lead plaintiff calculation). And where (as here) it is clear from the face of the pleadings that most of P&P's losses were suffered before any alleged corrective disclosure, the court would be abdicating its responsibility under the PSLRA if it were to ignore that issue at this stage.[6]

Judge Reyes distinguished those cases by noting that in the "bulk" of those cases, plaintiffs failed to adequately plead loss causation for <u>any</u> losses, rendering their complaints facially deficient. (Judge Reyes's Order at 7-8.) By contrast, he reasoned, even under the Menorah Group's theory, P&P sufficiently plead loss causation for some of its losses (i.e., those

---

[6] It is clear that courts cannot include non-recoverable losses in a calculation of each litigant's financial interest. To illustrate the point, the court offers the following example: If a plaintiff in this case had alleged that it suffered losses from sales of Comverse stock in 1990, years before any alleged misconduct (stock options backdating) had even begun, it is undisputed that such losses would not be recoverable. It follows that a court would be remiss to include such losses in calculating a litigant's approximate recoverable loss, simply because a plaintiff included those losses in its complaint. The facts of this case present a similar challenge. Before calculating a plaintiff's financial interest, the court must first determine what portion, if any, of a plaintiff's losses constitute potential <u>recoverable</u> losses for purposes of the necessary PSLRA/Olsten-Lax analysis. And under <u>Dura</u>, failure to demonstrate loss causation constitutes a fatal flaw that necessitates removing those losses from the financial interest calculation.

9

losses suffered after the alleged corrective disclosures), and thus P&P's claim itself is not facially insufficient in its entirety.[7]

But there is simply no basis for this artificial distinction. At bottom, either it is appropriate to consider loss causation, and the principles articulated by Dura, in the context of a PSLRA motion, or it is not. Beyond deciding which plaintiff has some claim against Comverse, this court must determine precisely which losses each plaintiff stands to recover as this litigation proceeds. That decision turns on whether each alleged loss, including the losses that P&P sustained before March 14, 2006, is adequately supported by allegations of loss causation. In short, Dura, Huntz, In re Veeco, and Kops, much like this case, require a court to make pre-discovery loss causation determinations regarding asserted claims (or parts of asserted claims) that are based on the facts alleged in the complaint. And in this case, those facts fail to support a recoverable claim for the in-and-out losses that P&P suffered.

### c. *Pleading Standard*

P&P contends that discounting any of its alleged losses amounts to imposing a heightened pleading standard that controverts the liberal standard imposed by Rule 8. (P&P Br. at 8-10.) That argument misapprehends this court's holding. Properly determining a plaintiff's financial interest in the litigation by considering loss causation as it is plead in the complaint does not alter the pleading standards imposed by the Federal Rules.[8] It is true that plaintiffs should not be

---

[7] Both parties acknowledge that P&P did retain some shares through the beginning of the period of corrective disclosures in March 2006. (See P&P Br. at 10-11; Menorah Group Br. at 3-4.) The Menorah Group does challenge P&P's standing, arguing that P&P did not suffer any loss, but actually realized a gain, on the shares that it retained through the alleged disclosure period. The court finds that it need not decide the issue of P&P's standing on this motion, however, because the court has determined that any loss that P&P might have suffered on its retained shares does not exceed the Menorah Group's aggregate recoverable loss.

[8] The cases that P&P cites in support of its argument are inapposite. In In re Espeed, Inc. Sec. Litig., 457 F. Supp. 2d 266, 296 (S.D.N.Y. 2006), the court denied defendant's motion to

10

penalized at the pleading stage for failing to enumerate every corrective disclosure in their initial complaints, and this court has no intention of imposing any such penalty. But by the same token it would be unfair to speculate that P&P will ultimately be able to demonstrate loss causation for its in-and-out transactions, despite its patent failure to allege facts in support thereof. Moreover, such a practice would encourage plaintiffs competing to lead a PSLRA litigation to overstate their losses at the outset of a lawsuit, in hope of a court's declining to look beyond those conclusory allegations until after discovery, when it might be too late to appoint a more deserving lead plaintiff. In selecting a plaintiff to lead this litigation at this stage of the proceedings, the court can and must only consider the pleadings before it. See In re Watchguard Sec. Litig., 2005 U.S. Dist. LEXIS 40923 (D. Wash. July 13, 2005) (a court "must rely solely on the pleadings and declarations that each contestant provides" in determining which movant to select as lead plaintiff) (citing In re Cavanaugh, 306 F.3d 726, 730 (9th Cir. 2002)). The exclusion of in-and-out shares follows directly from the underlying holding in Dura, and neither Judge Reyes nor P&P suggests a viable, just alternative. Thus, Judge Reyes erred in accepting P&P's estimate of a $2.93 million loss and finding that P&P demonstrated the greatest financial stake in the litigation.

---

dismiss because plaintiffs had alleged corrective disclosures (albeit partial ones) in the complaint. In fact, Judge Scheindlin noted the importance of the pleadings, pointing out that a "conclusory assertion, without more, cannot substitute for specific allegations that disclosure regarding PI [eSpeed's newly-developed technology] was a proximate cause of the economic loss." Id. at 296. The court's holding in In re Bradley Pharms., Inc. Sec. Litig., No. 05-1219 (FSH), 2006 U.S. Dist. LEXIS 13738, at *19-*21, is similarly unremarkable. The Bradley court correctly noted that "loss causation allegations were not meant to place a 'great burden upon a plaintiff.'" Id. at *19. But this court has explicitly endorsed that proposition, and does not purport to place any such heightened burden on P&P. Free to plead as they wish, P&P cannot expect this court to supplement the complaint with facts based on sheer speculation that the greater portion of P&P's asserted losses will be recoverable. None of the cases on which P&P relies says otherwise.

### 2. "Contrary to Law" Standard

P&P argues that even if this court were to disagree with Judge Reyes's conclusion, it cannot find that Judge Reyes's Order rises to the level of "contrary to law" because the Second Circuit has not clearly taken a stance on whether Dura must be applied to a lead plaintiff motion. (See P&P Br. at 4.)

Such an argument misconstrues this court's obligations. An order is contrary to law "when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." Ri Sau Kuen Chan v. NYU Downtown Hosp., 2004 U.S. Dist. LEXIS 16751, at **9-11 (S.D.N.Y. 2004) (citing and quoting Catskill Dev., L.L.C. v. Park Place Entm't Corp., 2006 F.R.D. 78, 86 (S.D.N.Y. 2002)). It is true that the Second Circuit has not squarely addressed the precise question presented by this objection. But both the Second Circuit and the Supreme Court have set forth precedent regarding the central issue of loss causation, which dramatically impacts the scope of recoverable losses in private securities litigation. It is not the function of a district court to merely robotically apply precedential authority that addresses a factual predicate similar to the one it currently confronts; instead a district judge must also critically identify the core holdings underlying precedential authority and apply them to the unique sets of facts that district courts encounter routinely. In this tradition, this court must avoid utilizing a "one size fits all" analysis. Here, it is clear that the court cannot decline to consider the implications of loss causation when applying the PSLRA standard without running afoul of the principles set forth in Dura and its progeny. (See infra, Section III.D.1.b.)

### 3. Greatest Financial Interest

Applying the Dura principle to the instant motion, it is clear that Judge Reyes failed to limit his calculation of P&P's losses to recoverable losses – *i.e.*, losses it sustained from selling Comverse shares at reduced prices after March 14, 2006, the earliest corrective disclosures alleged in the complaint.[9]

The facts that this court can and must consider are in the complaint, and on those facts, only losses resulting from the sales of the final 172,156 of P&P's holdings are recoverable. As the complaint currently stands, sales of the remaining 362,315 shares did not follow any alleged corrective disclosure, and are not as of yet proximately linked to Comverse misconduct for which P&P can recover.

Evaluating the complaint on its face, then, Judge Reyes erred in including in-and-out transactions in his calculation. Judge Reyes included 38 in-and-out sales of a total of 362,315 shares, which if properly excluded from Judge Reyes's calculation would have left P&P with only 172,156 shares on whose sale it could recover losses – a few hundred shares fewer than the 172,500 shares purchased and retained by the Menorah Group. And more importantly, the Menorah Group lost $343,202 on its shares, whereas P&P realized a gain of $132,722 on its shares. As such, the Menorah Group should be appointed lead plaintiff under the PSLRA's rebuttable presumption in favor of the movant with the largest financial interest.

In summary, Judge Reyes considered the following figures in reaching his decision:

---

[9] P&P does not dispute that the complaint fails to allege any corrective disclosure prior to March 14, 2006.

| Movant | FACTOR 1 Shares Purchased | FACTOR 2 Net Shares Purchased (Shares Retained) | FACTOR 3 Net Funds Expended | FACTOR 4 Approximate Loss |
|---|---|---|---|---|
| **P&P** | **534,471** | 172,156 | **$6.78 million** | **$2.93 million** |
| **Menorah Group** | 172, 500 | **172,500** | $4.2 million | $343,202 |

However, this court finds that proper application of precedent would instead yield the following figures:

| Movant | FACTOR 1 Shares Purchased | FACTOR 2 Net Shares Purchased (Shares Retained) | FACTOR 3 Net Funds Expended | FACTOR 4 Approximate Gain/Loss |
|---|---|---|---|---|
| **P&P** | **534,471** | 172,156 | $3.7 million | $132,722 gain (FIFO) $316,905 gain (LIFO) |
| **Menorah Group** | 172, 500 | **172,500** | **$4.2 million** | **$343,202 loss** |

Because the Menorah Group had the greatest number of relevant net shares purchased, net funds expended, and suffered the greatest loss, the Menorah Group should be appointed lead plaintiff under the PSLRA's rebuttable presumption in favor of the movant with the largest financial interest.

14

In its opposition brief, P&P contests the results of the calculations in the Kotz Declaration for the first time and suggests that even absent its in-and-out transactions, P&P suffered a $2.5 million loss under a Last-in-First-Out ("LIFO") method of calculation.[10] This figure stands in stark contrast to the $132,722 gain that the Menorah Group claims P&P realized from the sale of P&P's 172,156 shares that it retained through the corrective disclosure period.

P&P failed to raise this issue during the initial hearings on which Judge Reyes based his determination, and this court is reluctant to consider new arguments raised for the first time in objection. In an abundance of caution, however, this court analyzed P&P's newly-submitted calculation. The Kotz Declaration clearly delineates the losses that P&P and the Menorah Group each suffered, if in-and-out transactions are excluded from the calculation. (See Kotz Declaration, Ex. 11 attached thereto.) P&P has failed to raise any serious concerns about the accuracy of the calculations contained therein. It appears that P&P's new calculation inexplicably matches sales of shares from 2001 with purchases of shares that occurred years later in 2006. Moreover, P&P's new calculations are based on a lower average price for the current value of Comverse shares. Thus, even if the court were to accept P&P's representations, P&P fails to account for the corresponding increase in the calculation of the Menorah Group's losses. In sum, the court is not persuaded that, absent its in-and-out losses, P&P can demonstrate a loss that exceeds the loss suffered by the Menorah Group.

---

[10] Courts have recognized two potential accounting methods when assessing gains/losses that result from the purchase and sale of securities. Under the First-in-First-Out ("FIFO") method, a party matches its first share sold with its first share purchased to determine the gain/loss. Each subsequent sale proceeds accordingly. Under the Last-in-First-Out ("LIFO) method, a party matches its first share sold with its most recent share purchased to determine the gain/loss.

## IV. CONCLUSION

Accordingly, the court VACATES Judge Reyes's Order, and APPOINTS the Menorah Group and Pomerantz Haudek to lead this consolidated action.

SO ORDERED.

Dated: March 2, 2007                                  /s/ Nicholas G. Garaufis
       Brooklyn, N.Y.                                     Nicholas G. Garaufis
                                                            United States District Judge