UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
IN RE COMVERSE TECHNOLOGY, INC.
SECURITIES LITIGATION                            **MEMORANDUM AND ORDER**

                                                          06-CV-1825 (NGG) (RER)
-------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

       On September 27, 2006, Magistrate Judge Ramon E. Reyes issued a memorandum and order appointing Plumbers and Pipefitters National Pension Fund (P&P) and its counsel, Lerach Coughlin Stoia Geller Rudman & Robbins LLP, as lead plaintiff and lead counsel in this consolidated action under the Private Securities Litigation Reform Act of 1995 ("PSLRA"). (Memorandum & Order (Docket Entry # 45).) Menorah Insurance Co. Ltd. and Mivtachim Pension Funds Ltd. (collectively, the "Menorah Group") appealed Judge Reyes's decision to this court. On March 2, 2007 this court issued a Memorandum and Order vacating Judge Reyes's order and appointing Menorah Group and its counsel, Pomerantz Haudek Block Grossman & Gross LLP, as lead plaintiff and lead counsel. (Memorandum & Order ("March 2, 2007 Order") (Docket Entry # 65).) P&P has now filed a motion for reconsideration of the March 2, 2007 Order, arguing that it, and not Menorah Group, is the proper lead plaintiff in this action. (Plumbers and Pipefitters National Pension Fund's Memorandum in Support of Its Motion for Reconsideration of the March 2, 2007 Order Appointing the Menorah Group as Lead Plaintiff ("P&P Mem.") (Docket Entry # 73).) For the reasons stated below, P&P's motion for reconsideration is GRANTED. Upon reconsideration, the court adheres to its ruling of March 2, 2007.

       Familiarity with the March 2, 2007 Order, as well as with the court's February 20, 2008

1

order deciding Defendants' various motions to dismiss, is assumed. (See Memorandum & Order ("February 20, 2008 Order") (Docket Entry # 165).)

**I.      STANDARD OF REVIEW**

Eastern District of New York Local Civil Rule 6.3 provides that a party seeking reconsideration of a court order determining a motion must set forth "concisely the matters or controlling decisions which counsel believes the court has overlooked."

**II.     P&P'S ENTITLEMENT TO RECONSIDERATION**

Under the PSLRA, the procedure for selecting the "most adequate plaintiff" who is to be appointed lead plaintiff begins with the adoption of a presumption that the most adequate plaintiff is the plaintiff that:

> (aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(I);
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The plaintiff who satisfies these conditions is presumptively the lead plaintiff, subject to rebuttal

> only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff--
> (aa) will not fairly and adequately protect the interests of the class; or
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

Id. at § 78u-4(a)(3)(B)(iii)(II). In its March 2, 2007 Order, the court stated that "[T]he decision in this case turns on the court's determination of which plaintiff has the 'largest financial interest' in the relief sought by the class." (March 2, 2007 Order at 4.) After determining that

Menorah Group had the largest such financial interest, the court designated Menorah Group lead plaintiff. (Id. at 16.)

As P&P points out, however, the court never considered (1) whether Menorah Group had made a *prima facie* showing that it satisfied Rule 23's typicality and adequacy requirements under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); or (2) the rebuttal evidence P&P presented to the court under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) that Menorah Group could not fairly and adequately protect the class. (See, e.g., P&P Mem. at 12 n.11.)[1] P&P has therefore demonstrated that it is entitled to reconsideration under Local Civil Rule 6.3.

### III. P&P'S FAILURE TO MEET ITS BURDEN

P&P argues that Menorah Group cannot adequately represent the class because it purchased shares of Comverse Technology, Inc. only after Comverse had partially disclosed the options-backdating scheme on March 14, 2006. On that day Comverse issued a press release disclosing the creation of a special committee

> to review matters relating to the company's stock option grants, including, but not limited to, the accuracy of the stated dates of option grants and whether all proper corporate procedures were followed. . . . Although it has not been determined whether the review will result in any restatement of the company's historical financial statements and, if so, the years affected and the amounts involved, management believes that certain restatements will likely be required. Any such restatements will not have an impact on historical revenues or operating results

---

[1] P&P also argues that it should have been given an additional opportunity to present evidence regarding Menorah Group's inadequacy after the court determined that Menorah Group was the presumptive lead plaintiff. (P&P Mem. at 6); see, e.g., In re Cavanaugh, 306 F.3d 726, 730 (9th Cir. 2002) ("The third step of the process is to give other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfied Rule 23's typicality and adequacy requirements."); 15 U.S.C. § 78u-4(a)(3)(B)(iv) (providing plaintiffs an opportunity to conduct discovery as to whether a member of the plaintiff class is the most adequate plaintiff). However, as P&P had already presented such rebuttal evidence before the court issued its March 2, 2007 Order, there was no need to give P&P an additional opportunity to present evidence.

excluding stock option related expenses. (P&P Mem., Exh. A.)

P&P argues that because Menorah Group purchased Comverse shares only after this press release was issued, it cannot demonstrate that it would not have bought its shares had it known about the options-backdating scheme at Comverse. It is therefore subject to what P&P calls a "crippling unique defense" sufficient to disqualify it as lead plaintiff. (Plumbers and Pipefitters National Pension Fund's Reply Memorandum in Further Support of Its Motion for Reconsideration of the March 2, 2007 Order Appointing the Menorah Group as Lead Plaintiff (Docket Entry # 77) at 3.) P&P argues that because of this unique defense, Menorah Group's attention during this litigation will be diverted from issues applicable to the class at large, as defense counsel will try to make Menorah Group's "unusual trading patterns" a focus of litigation. (P&P Mem. at 12.) Menorah Group's attention to these issues, P&P argues, would not be in the best interests of the rest of the class.

The ability of a class representative to adequately represent a class commonly becomes an issue at the class certification stage, when the court must determine whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Second Circuit has ruled, for example, that it was not an abuse of discretion for the district court to refuse to certify a class action where the purported class representative was aware of, and had actually investigated, an alleged fraud involving the marketing of CDs, but in spite of this knowledge had purchased more CDs. Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 176, 179-80 (2d Cir. 1990). If the class action were allowed to proceed, the Second Circuit stated, "there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." Id. at 180 (citations omitted). In

4

a different case, where an investor was a "sophisticated broker" who had access to more information than other investors in the class and who bought the stock at issue after its value had declined "amidst reports of financial difficulties," the Second Circuit found that it was within the district court's discretion to reject the investor as a class representative. Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 59-60 (2d Cir. 2000). "While perhaps no one facet of [her] claim renders it atypical, her status as a professional broker and the defenses to which she is subject convince us that it was within the district court's discretion to reject [her] as a class representative." Id. at 60.

The court does not believe that the timing of Menorah Group's purchases of Comverse shares renders it incapable of adequately representing the class, for two principal reasons.

First, the court does not believe that the "unique defense" that P&P claims Defendants will raise is strong enough to create a real conflict of interest between Menorah Group and the members of the class who purchased Comverse shares before Comverse's March 14, 2006 press release. In its February 20, 2008 Order, this court found that Comverse's April 17, 2006 corrective disclosure, which was significantly stronger than the March 14, 2006 disclosure relied upon here by P&P, was not as a matter of law necessarily sufficient to "counter-balance effectively" its previous misleading statements. (See February 20, 2006 Order at 21-29.) The weaker disclosure in Comverse's March 14, 2006 press release therefore will not likely be a significant barrier to Menorah Group's recovery. Notably, Defendants did not assert in their motions to dismiss that their liability was extinguished by Comverse's March 14, 2006 press release. This lends further support to the court's conclusion that Defendants' defense based on the timing of Menorah Group's purchases is not strong enough to distract Menorah Group from

5

the work of representing the class as a whole.[2]

Second, the court is not convinced that this defense is a "unique" defense within the meaning of the PSLRA. There are undoubtedly many members of the class of plaintiffs who, like Menorah Group, purchased shares of Comverse only after the March 14, 2006 press release, and P&P does not argue that the class of plaintiffs should be defined so as to exclude such plaintiffs. Moreover, the fact that Menorah Group purchased shares of Comverse stock only after Comverse's March 14, 2006 press release does not suggest that it will not vigorously represent the interests of plaintiffs who purchased Comverse shares only before that press release: Menorah Group will recover nothing unless it proves that members of the class who purchased Comverse shares before the March 14, 2006 press release, like P&P, were harmed by Comverse's earlier false disclosures.

The court finds, therefore, that P&P has failed to rebut the PSLRA's presumption that

---

[2] P&P has not asserted that Menorah Group actually knew about the options-backdating scheme at Comverse, thus distinguishing this case from Gary Plastic, where the class representative was actually aware of the fraud but continued to purchase CDs. Likewise, in In re Enron Corporation Securities Litigation, 206 F.R.D. 427, 455 (S.D. Tex. 2002), cited by P&P, the court's decision to disqualify a potential lead plaintiff rested in part on the plaintiff's reliance upon an advisory firm with connections to Enron, and the possibility that knowledge of nonpublic information about Enron would therefore be imputed to the plaintiff.

In re Cardinal Health, Inc. Securities Litigation, 226 F.R.D. 298 (S.D. Ohio 2005), also cited by P&P, is not similarly distinguishable, as the potential lead plaintiff there, the State of New Jersey, was not alleged to have acted on nonpublic information. However, the disclosures that preceded the potential lead plaintiff's purchases in Cardinal Health were significantly stronger than the March 14, 2006 press release at issue here; the State of New Jersey purchased shares even after it was disclosed that the United States Attorney's Office had initiated a criminal investigation into Cardinal Health's revenue accounting methods. Id. at 310. Baffa, while also stressing the district court's discretion, and stating that "perhaps no one facet of [her] claim renders it atypical," Baffa, 222 F.3d at 60, is similarly distinguishable, for the investor at issue purchased stock even after the issuer declared bankruptcy. Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 185 F.R.D. 172 (S.D.N.Y. 1999) (lower court decision in Baffa).

Menorah Group, the plaintiff with the "largest financial interest in the relief sought by the class," should be the lead plaintiff in this action.

IV. CONCLUSION

For the reasons stated above, P&P's motion for reconsideration is GRANTED. Upon reconsideration, the court adheres to its ruling of March 2, 2007.

SO ORDERED.

Dated: March 24, 2008　　　　　　　　　　　　　　　　　　/s Nicholas G. Garaufis
　　　　Brooklyn, N.Y.　　　　　　　　　　　　　　　　　　NICHOLAS G. GARAUFIS
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge