UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

IN RE COMVERSE TECHNOLOGY, INC.  Master File No. CV 06-1825 (NGG)(RER)
SECURITIES LITIGATION

-------------------------------------------------------------x

## STIPULATION OF SETTLEMENT

This Stipulation of Settlement (the "Stipulation"), dated December 16, 2009, is made and

entered into by and among the Court-appointed Lead Plaintiff, The Menorah Group – Menorah

Insurance Co., Ltd. and Mivtachim Pension Funds Ltd. ("Lead Plaintiff"), and Defendants

Comverse Technology, Inc. ("Comverse" or the "Company"), Jacob "Kobi" Alexander

("Alexander"), William F. Sorin ("Sorin"), David Kreinberg ("Kreinberg"), John H. Friedman

("Friedman"), Ron Hiram ("Hiram"), and Sam Oolie ("Oolie") (collectively the "Defendants"),

by and through their respective counsel of record in the Litigation. The parties to this Stipulation

(including the Lead Plaintiff and the Defendants) shall collectively be referred to as the

"Parties." This Stipulation is intended by the Parties to fully, finally and forever resolve,

discharge and settle the Released Plaintiffs' Claims (as the term is defined below) for $225

million, upon the terms and subject to the conditions hereof, and subject to the approval of the

Court.

I.  __THE LITIGATION__

  A.  __Procedural History of the Litigation__

On April 16, 2006, the first of five individual actions was filed against Comverse and

certain officers of the Company alleging violations of Sections 10(b) and 20(a) of the Securities

Exchange Act of 1934. The Court consolidated all five of the actions on August 24, 2006, and

appointed the Menora Group as Lead Plaintiff for the consolidated Actions.  A Consolidated Amended Complaint was filed on March 23, 2007.

Named as defendants were Comverse, certain of its former senior officers and directors: Alexander, Kreinberg, and Sorin; and members of the Company's Audit Committee and Stock Option and Remuneration Committee: Oolie, Friedman and Hiram ("Compensation Committee Defendants").

Defendants moved to dismiss the Consolidated Amended Complaint on July 30, 2007, and on October 31, 2007, Magistrate Judge Reyes issued a Report and Recommendation recommending that the Court deny Defendants Comverse, Alexander, Kreinberg and Sorin's motions to dismiss the Sections 10(b) and 20(a) claims ("Report and Recommendation) (Docket # 135), but recommended that all claims against the Compensation Committee Defendants be dismissed, as well as dismissal of all other claims against all Defendants.

On January 9, 2008, Lead Plaintiff filed an Objection to the portion of the Report and Recommendation regarding dismissal of certain claims against the Compensation Committee Defendants, and on February 20, 2008, the Court reinstated those claims against the Compensation Committee Defendants.

On July 15, 2008, Lead Plaintiff filed its Motion for Class Certification of a class of all purchasers of the common stock of Comverse Technology, Inc. during the period from April 30, 2001 through November 14, 2006, both dates inclusive.  Defendants opposed Lead Plaintiff's Motion for Class Certification. Discovery was conducted by way of depositions of Menora Group personnel and the production of relevant Menora Group documents. At the time the Settling Parties reached an agreement in principle, the Court had yet to render a decision on this motion.

Through the course of this Litigation, the Parties have engaged in extensive discovery. Defendants and their independent auditors, Deloitte & Touche LLP ("Deloitte"), have produced over 7 million pages of documents and Lead Counsel has, among other things, reviewed such documents and conducted numerous depositions.

In an effort to resolve this Litigation through good-faith settlement negotiations, the Parties have engaged in extensive discussions and negotiations beginning in the summer of 2008. Starting in December 2008, the Parties-engaged in mediation sessions, including conferences before Honorable Daniel Weinstein, a retired state judge with extensive experience in mediating complex litigation and securities actions. Prior to the first mediation conference, Lead Counsel and Comverse's counsel prepared and submitted comprehensive mediation statements to Judge Weinstein. The mediation statements presented their respective Parties' views about the strengths and weaknesses of the claims, offered their differing views as to the damages suffered by the Class, and highlighted the critical issues that would determine whether a settlement was possible.

After the initial mediation session on December 1, 2008, numerous subsequent sessions took place in person and telephonically with Judge Weinstein. In-person sessions with Judge Weinstein were attended by Plaintiffs' banking consultants and Comverse's Chief Financial Officer and General Counsel. These sessions were marked by extensive arm's length negotiations and give and take on multiple issues

**B.**     **Plaintiffs' Claims and the Benefits of Settlement**

Lead Plaintiff believes that the claims asserted in the Action have merit and that the evidence of the underlying events and transactions alleged in the Complaint, developed through its discovery to date, supports the claims.  Additionally, Lead Counsel has researched the

applicable law with respect to the Class's claims and believes they could successfully refute any defenses to their claims raised by Defendants.  Nonetheless, Lead Plaintiff and its counsel recognize and acknowledge the expense and length of continued prosecution of the Action against Defendants through trial and any subsequent appeals.  Lead Plaintiff and its counsel also have taken into account the uncertain outcome and risks of any litigation, especially in complex actions, as well as the difficulties and delays inherent in such litigation.  Lead Plaintiff and its counsel are mindful of the inherent problems of proof of, and possible defenses to, the federal securities law violations asserted in the Action, including, but not limited to, proof of damages, proof of causation of damages, and proof of Defendants' requisite state of mind.  Lead Plaintiff believes that it is desirable that the Released Plaintiffs' Claims be settled.  Therefore, Lead Plaintiff believes that the Settlement set forth in this Stipulation confers substantial benefits upon the Class.  Based on their evaluation, Lead Plaintiff and its counsel have concluded that the terms and conditions of this Stipulation are fair, reasonable and adequate to the Class, and that it is in the best interests of the Class to settle the claims raised in the Action pursuant to the terms and provisions of this Stipulation.

## C.    Defendants' Denials of Wrongdoing and Liability

Defendants have denied and continue to deny, *inter alia*, that Lead Plaintiff and the Class have suffered all damages alleged in the Consolidated Amended Complaint; that the price of Comverse's securities was artificially inflated by reason of the alleged misrepresentations, omissions, or otherwise; and that the alleged harm suffered by Lead Plaintiff and the Class, if any, were causally linked to the alleged misrepresentations or omissions in the Action. In addition, Defendants maintain that they have meritorious defenses to all claims alleged in the Action.

Nonetheless, taking into account the uncertainty and risks inherent in any litigation, especially in complex cases such as this one, Defendants have concluded that further litigation of the Action would be protracted, burdensome, and expensive, and that it is desirable and beneficial to them that they secure releases to the fullest extent permitted by law and that the Action be fully and finally settled and terminated in the manner and upon the terms and conditions set forth in this Stipulation.

This Stipulation, and all related documents, shall not be construed as or deemed to be evidence of or an admission or concession on the part of any Defendant, or any of Defendants' Released Parties (as defined in ¶1.38), with respect to any claim of any fault or liability or wrongdoing or damage whatsoever. The Parties, and each of them, shall not assert or pursue any action, claim or rights that any party hereto violated any provision of Rule 11 of the Federal Rules of Civil Procedure. Further, the Parties, and each of them, will not deny in any statement made to any media representative that the Action is being settled voluntarily after consultation with competent counsel. The Parties, and each of them, and their respective counsel agree that the Action was resolved in good faith, following arm's length bargaining, confers substantial benefits upon the Class and, based upon their evaluation, is in the best interests of the Defendants as well as Lead Plaintiff and the Class.

## II.  TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

### A.  Introduction

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Lead Plaintiff, the Class, and each of them, and Defendants, and each of them, by and through their respective undersigned counsel or attorneys of record that, subject to approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, in consideration of the benefits flowing to the Parties from the Settlement set forth herein, the Litigation and the Released

Plaintiffs' Claims shall be finally and fully compromised, settled and released, and the Action shall be dismissed with prejudice, as to all Parties, upon and subject to the terms and conditions of this Stipulation.

### B.  Definitions

As used in this Stipulation, the following terms have the meanings specified below:

1.1     "Authorized Claimant" means any member of the Class who is a Claimant (as defined in ¶ 1.6) and whose claim for recovery has been allowed pursuant to the terms of this Stipulation.

1.2     "Additional Alexander Payment" means the payment to be made by Alexander to Comverse pursuant to ¶ 2.3(c).

1.3     "Alexander Insurance and Pension Proceeds" means (i) the cash surrender value of Alexander's split dollar life insurance policies; (ii) the amount of Alexander's Israeli education fund Account(s); and (iii) the total amount of Alexander's Israeli Manager's Insurance policies (both pension and severance components).

1.4     "Approval Triggering Events" refers to the failure of any of the events detailed in ¶ 2.23 to occur.

1.5     "Business Day" means any day except a Saturday or Sunday or other day on which national banks are authorized by law or executive order to close in the State of New York.

1.6     "Claimant" means any Class Member (as defined in ¶ 1.9) who files a Proof of Claim in such form and manner, and within such time, as the Court shall prescribe.

1.7     "Claims Administrator" means the firm of Berdon Claims Administration LLC, which shall administer the Settlement.

1.8     "Class" means all purchasers of the common stock of Comverse Technology, Inc. during the period from April 30, 2001 through January 29, 2008, both dates inclusive. Excluded

6

from the Class are Defendants, all current and former directors and officers of Comverse, and all employees of Comverse and/or its Subsidiaries during the Class Period, and any family member, trust, company, entity or affiliate controlled or owned by any of the excluded persons and entities referenced above.

1.9     "Class Member" means a person or entity that falls within the definition of the Class as set forth in ¶ 1.8.

1.10     "Class Notice and Administration Escrow Fund" means the funds deposited into the Class Notice and Administration Fund Escrow Account and any interest or income earned thereon.

1.11     "Class Notice and Administration Fund Escrow Account" means an interest bearing escrow account established by the Claims Administrator to receive funds pursuant to ¶ 2.2(a).

1.12     "Class Period" means the period from April 30, 2001 through January 29, 2008, both dates inclusive.

1.13     "Common Stock" means the shares of common stock, par value $0.10 per share, of Comverse.

1.14     "Comprehensive Form 10-K" means an Annual Report on Form 10-K covering Comverse's four fiscal years ended January 31, 2009 that Comverse intends to file with the SEC.

1.15     "Comverse Settlement Fund Escrow Account" means an interest bearing escrow account established by the Escrow Agent to receive the amounts of funds payable by ¶¶ 2.2(b)-(d) and 2.3(a)-(c).

1.16     "Court" means the United States District Court for the Eastern District of New York.

1.17    "Defendants" means Comverse, Alexander, Sorin, Kreinberg, Friedman, Oolie and Hiram.

1.18    "Defendants' Counsel" means the law firms:  Weil, Gotshal & Manges LLP; Morvillo, Abramowitz, Grand, Iason, Anello & Bohrer, P.C.; Dechert, LLP; Law Offices of Solomon N. Klein; Kramer Levin Naftalis & Frankel LLP; and Baker Botts, LLP.

1.19    "Effective Date of Settlement" or "Effective Date" means the first date by which the following two events have occurred:

(i)       Entry of the Judgment and Order of Dismissal with Prejudice has become Final; and

(ii)      The Court has issued an order finding that any issuances of Settlement Shares pursuant to ¶ 2.7 are exempt from registration under the Securities Act pursuant to the exemption contained in Section 3(a)(10) thereof.

1.20    "Escrow Accounts" mean, collectively, the Class Notice and Administration Fund Escrow Account and the Comverse Settlement Fund Escrow Account.

1.21    "Escrow Agent" means a federally chartered bank or banks designated by Lead Counsel.

1.22    "Exchange Act" means the Securities Exchange Act of 1934, as amended.

1.23    "Fair Market Value" means, with respect to the Settlement Shares on a per share basis, the average of the closing price per share of Common Stock for each of the ten (10) consecutive trading days ending immediately prior to the time that Comverse serves notice on Lead Plaintiff and Lead Counsel of its election to issue Common Stock pursuant to ¶ 2.8.

1.24    "Final" means that an order or judgment is no longer subject to further appeal or review, whether by exhaustion of any possible appeal, lapse of time or otherwise;

8

1.25   "Judgment and Order of Dismissal With Prejudice" means the proposed final order and judgment to be entered by the Court approving the Settlement, substantially in the form attached hereto as Exhibit B or in such other form as may be approved in writing by all of the Parties acting by and through their respective counsel of record in the Litigation.

1.26   "Lead Counsel" or "Plaintiffs' Counsel" means the Court-appointed Lead Counsel:  Pomerantz Haudek Grossman & Gross LLP.

1.27   "National Securities Exchange" means a securities exchange that has registered with the United States Securities and Exchange Commission under Section 6 of the Securities Exchange Act of 1934.

1.28   "Non-UBS Auction Rate Securities" means the securities listed on an exhibit to the form of Security and Account Control Agreement referenced in ¶ 2.5.

1.29   "Notice" means the Notice of Pendency and Proposed Settlement of Class Action and Settlement Hearing Thereon, which is to be sent to members of the Class substantially in the form attached hereto as Exhibit 1 to Exhibit A.

1.30   "Order of Attachment" means the order dated June 3, 2008,  attaching certain real properties owned by Alexander, in Comverse Technology, Inc. v. Jacob "Kobi" Alexander, No. 600142/08 (N.Y. Sup.).

1.31   "Order for Notice and Hearing" means the proposed order preliminarily approving the Settlement and directing notice thereof to the Class substantially in the form attached hereto as Exhibit A.

1.32   "Person" means an individual, corporation, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association,

government or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives, or assigns.

1.33   "Plaintiffs" mean all Class Members.

1.34   "Plan of Allocation" means a plan or formula for allocating the Net Settlement Fund to Authorized Claimants. Any Plan of Allocation is not part of this Stipulation and Defendants shall have no responsibility or liability with respect thereto.

1.35   "Private Equity Securities" shall mean Alexander's investments in SSB Masters Fund, L.P., Private Selection Fund I LLC, Private Selection Fund 2 L.P. and SSB Greenwich Street II, LP, held in Morgan Stanley Smith Barney account number 600-00338 (one of the Seized Alexander Accounts), and valued at $2,329,306 as of October 31, 2009.

1.36   "Proof of Claim" means the Proof of Claim and Release to be submitted by Claimants, substantially in the form attached as Exhibit 2 to Exhibit A.

1.37   "Publication Notice" means the Summary Notice of Pendency and Proposed Settlement of Action and Settlement Hearing Thereon to be published in *The Wall Street Journal (National Edition), Globes,* and a national business internet newswire, substantially in the form attached as Exhibit 3 to Exhibit A.

1.38   "Released Parties" means the Plaintiffs, Defendants, and each of Lead Plaintiff's and Defendants' respective Released Parties. "Defendants' Released Parties" shall mean each and every past and current Defendant and, whether or not identified in any complaint filed in the Action, each Defendant's past or present directors, officers, employees, partners, member firms or affiliates, principals, agents, predecessors, successors, parents, subsidiaries, divisions, joint ventures, attorneys, accountants, insurers, reinsurers, assigns, spouses, heirs, associates, related or affiliated entities, or any members of their immediate families, or any trusts for which any of

them are trustees, settlers or beneficiaries.  "Lead Plaintiff's Released Parties" shall mean any and all of Lead Plaintiff's respective present, past or future officers, directors, and employees, and/or their respective families, parent entities, associates, affiliates or subsidiaries, and each and all of their respective past, present or future officers, directors, stockholders, agents, representatives, employees, attorneys, accountants, insurers, co-insurers and reinsurers, heirs, executors, trustees, general or limited partners or partnerships, limited liability companies, members, personal or legal representatives, estates, administrators, predecessors, successors and assigns or other individuals or entities in which Lead Plaintiff has a controlling interest or which is related to or affiliated with Plaintiffs and any other representatives of any of these Persons or entities whether or not any such Released Parties were named, served with process or appeared in the Action.

     1.39    "Released Plaintiffs' Claims" means all claims (including "Unknown Claims" as defined in ¶ 1.52), rights, demands, suits, matters, issues, or causes of action under federal, state, local, foreign law, or any other law, rule, or regulation, whether known or unknown, that were, could have been, or could in the future be asserted against the Released Parties by Plaintiffs in any court of competent jurisdiction or any other adjudicatory tribunal, in connection with, arising out of, related to, based upon, in whole or in part, directly or indirectly, in any way, to the facts, transactions, events, occurrences, acts, disclosures, oral or written statements, representations, filings, publications, disseminations, press releases, presentations, accounting practices or procedures, compensation practices or procedures, omissions or failures to act which were or which could have been alleged or described in this Class Action by Plaintiffs.  The "Released Plaintiffs' Claims" include, but are not limited to, any and all claims related to or arising out of the matters reported in the Company's Current Reports on Form 8-K filed with the SEC on

November 5, 2007, and January 29, 2008, the Report of the Special Committee of Comverse's

Board of Directors summarized in the Company's Current Report on Form 8-K filed with the

SEC on January 29, 2008, the Federal Bureau of Investigation affidavit in support of arrest

warrants issued against defendants Alexander, Kreinberg and Sorin, or the SEC's complaints

against defendants Alexander, Kreinberg and Sorin, compensation practices, options backdating,

the administration of a secret options reserve fund, the recycling of unexercised options from

departed employees to other employees, or any other options dating or grant practice, procedure

or policy, the issuance and administration of employee stock options of Comverse, earnings

manipulation, finances, accounting practices or procedures, public filings, press releases or other

public statements or disseminations, revenue recognition issues, audits or reviews of Comverse's

consolidated financial statements for the fiscal year ended January 31, 2005, the first three

quarters of the fiscal year ended January 31, 2006, or any prior period, and claims for breach of

fiduciary duty, insider trading, misappropriation of information, failure to disclose, omissions or

failures to act, abuse of control, breach of Comverse's policies or procedures, waste,

mismanagement, gross mismanagement, unjust enrichment, misrepresentation, fraud, breach of

contract, negligence, breach of duty of care or other duty, violations of law, money damages,

injunctive relief, corrective disclosure, damages penalties, disgorgement, restitution, interest,

attorneys' fees, expert or consulting fees, and any and all other costs, expenses or liability

whatsoever, whether based on federal, state, local, foreign, statutory, common law, or any other

law, rule, or regulation, whether fixed or contingent, accrued or un-accrued, liquidated or un-

liquidated, at law or in equity, matured or un-matured, including both known claims and

Unknown Claims that were or that could have been alleged in the Consolidated Amended

Complaint in this Action. Notwithstanding any of the foregoing, neither this Stipulation nor the

12

Judgment and Order of Dismissal with Prejudice to be entered in this Litigation operates as a release of any claims by the plaintiffs in the derivative actions in *In re Converse Technology, Inc. Derivative Litigation*, No. 601272/06, pending in the Supreme Court for the State of New York, County of New York, or *In re Converse Technology, Inc. Derivative Litigation*, CV 06-1849 (NGG)(RER), pending in the United States District Court, Eastern District of New York.

1.40    "Released Defendants' Claims" means all claims, demands, rights, liabilities or causes of action, in law or in equity, accrued or unaccrued, fixed or contingent, direct, individual or representative, of every nature and description whatsoever, whether known or unknown, or based on federal, state, local, statutory or common law or any other law, rule or regulation, including the law of any jurisdiction outside the United States, that could have been brought heretofore or in the future against Plaintiffs, Lead Plaintiff, Lead Counsel and their Released Parties, arising out of the instituting, prosecution, settlement or resolution of the Action, provided however, that Defendants and Defendants' Released Parties shall retain the right to enforce in the Court the terms of the Stipulation.

1.41    "Securities Act" means the Securities Act of 1933, as amended.

1.42    "SEC" means the Securities and Exchange Commission.

1.43    "Settlement Agreement Date" means December 16, 2009.

1.44    "Settled Claims" means all of the Released Plaintiffs' Claims, and/or Released Defendants Claims.

1.45    "Settlement" means the settlement contemplated by this Stipulation.

1.46    "Settlement Fund" means the monies deposited into the Converse Settlement Fund Escrow Account and any residual monies held in the Class Notice and Administration Fund Escrow Account, and any interest or income earned thereon.

13

1.47    "Settlement Shares" means shares of Common Stock issued by Comverse pursuant to ¶ 2.7 in lieu of paying in cash a portion of the amounts otherwise required to be paid in cash to the Settlement Fund Escrow Account pursuant to ¶ 2.2(c) or 2.2(d).

1.48    "Seized Alexander Accounts" means the assets (including cash and securities in Ulticom, Inc. ("Ulticom") and Verint Systems, Inc. ("Verint"), and the Private Equity Securities) in Wells Fargo Advisors, LLC account number 2837-2882, Wells Fargo Advisors,  LLC account number 3852-3499, Morgan Stanley Smith Barney LLC account number 600-00338, and Morgan Stanley Smith Barney LLC account number 600-27694, held in the name of Jacob "Kobi" Alexander, which were seized by the United States Marshalls Service pursuant to Court order dated July 31, 2006 in *United States of America v. All Funds on Deposit at Citigroup Smith Barney Account No. 600-00338, et. al.*, Civil Action No. CV 06-03730 (NGG) (RER), pending in the United States District Court for the Eastern District of New York, as set forth in the account statement annexed hereto as Exhibit C.

1.49    "Subsidiary" means, with respect to Comverse, Ulticom, Verint, and any corporation, partnership, limited liability company, joint stock company, business trust or an unincorporated organization controlled by Comverse directly or indirectly through one or more intermediaries.

1.50    "Transfer Agent" means American Stock Transfer and Trust Company, LLC or any successor stock transfer or registrar that Comverse may appoint in respect to its Common Stock.

1.51    "UBS Auction Rate Securities" means auction rate securities owned by Comverse with a face value of $51,550,000 (Fifty-One Million Five Hundred and Fifty Thousand Dollars)

that Comverse, at its election, has the right to require UBS to purchase from Comverse at such

face value at any time between June 30, 2010 and July 2, 2012.

     1.52    "Unknown Claims" shall collectively mean all claims, demands, rights, liabilities,

and causes of action of every nature and description which Lead Plaintiff or any Class Member

does not know or suspect to exist in his, her or its favor at the time of the release of the Released

Parties which, if known by him, her or it, might have affected his, her or its settlement with and

release of the Released Parties, or might have affected his, her or its decision not to object to this

Settlement.  With respect to any and all Released Plaintiffs' Claims, the Parties stipulate and

agree that, upon the Effective Date, Lead Plaintiff shall expressly waive, and each of the Class

Members shall be deemed to have waived, and by operation of the Judgment and Order of

Dismissal With Prejudice shall have waived, the provisions, rights and benefits of California

Civil Code §1542, which provides:

> A general release does not extend to claims which the creditor does
> not know or suspect to exist in his or her favor at the time of
> executing the release, which if known by him or her must have
> materially affected his or her settlement with the debtor.

Lead Plaintiff shall expressly and each of the Class Members shall be deemed to have, and by

operation of the Judgment and Order of Dismissal With Prejudice shall have, expressly waived

any and all provisions, rights and benefits conferred by any law of any state or territory of the

United States, or principle of common law, which is similar, comparable or equivalent to

California Civil Code §1542.  Lead Plaintiff and Class members may hereafter discover facts in

addition to or different from those which he, she or it now knows or believes to be true with

respect to the subject matter of the Released Plaintiffs' Claims, but Lead Plaintiff shall expressly,

fully, finally and forever settle and release, and each Class member, upon the Effective Date,

shall be deemed to have, and by operation of the Judgment and Order of Dismissal With

Prejudice shall have, fully, finally, and forever settled and released, any and all Released Plaintiffs' Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.  Lead Plaintiff acknowledges, and the Class Members shall be deemed by operation of the Judgment and Order of Dismissal with Prejudice to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the Settlement of which this release is a part.

1.53   "Unpaid Comverse Amount" means, the aggregate amount that, as of any date, has not been paid under ¶ 2.2(c) and ¶ 2.2(d).

### C.    The Settlement

### The Settlement Consideration

2.1    In consideration of the full and final settlement of all claims asserted or which could have been asserted in the Action, Comverse and Alexander shall pay, or cause to be paid, the respective amounts indicated in ¶¶ 2.2 and 2.3, which payment obligations of Comverse and Alexander shall be several and not joint.

### Cash Payments To Be Wired To The Escrow Accounts by Comverse

2.2    Subject to ¶¶ 2.5 through 2.11, the following amounts, in cash, shall be wired and deposited as follows:

(a)    On the Settlement Agreement Date, Comverse shall wire $1,000,000 (One Million Dollars) to the Class Notice and Administrative Fund Escrow Account for costs associated with the notice of pendency of the Settlement to the Class;

(b)     No later than August 15, 2010, Comverse shall wire the sum of $51,500,000 to the Comverse Settlement Fund Escrow Account.  Notwithstanding the above, Comverse shall exercise its right to require UBS to purchase the UBS Auction Rate Securities on June 30, 2010, and shall wire the proceeds received therefrom to the Comverse Settlement Fund Escrow Account within forty eight (48) hours of receipt (which payment would reduce the amount payable on August 15, 2010);

(c)     On or before February 15, 2011, Comverse shall wire the sum of $30,000,000 (Thirty Million Dollars) to the Comverse Settlement Fund Escrow Account; and

(d)     On or before the August 15, 2011, Comverse shall wire the sum of $82,500,000 (Eighty-Two Million Five Hundred Thousand Dollars) to the Comverse Settlement Fund Escrow Account.

### Contribution by Alexander

2.3     Alexander shall cause to be paid $60,000,000 to the Class as follows:

(a)     Upon the entry of the Judgment and Order of Dismissal With Prejudice, Alexander and his wife, Hana Alexander (collectively the "Alexanders"), will use best efforts to comply with all reasonable requests by the Office of the United States Attorney for the Eastern District of New York (the "USAO") to facilitate the forfeiture of the assets in the accounts seized by the U.S. Marshalls in *United States of America v. All Funds on Deposit at Citigroup Smith Barney Account No. 600-00338, et. al.*, Civil Action No. CV 06-03730 (NGG) (RER).  The Alexanders will also cooperate with all reasonable requests by the USAO and Comverse regarding the transfer of the assets in the Seized Alexander Accounts to Comverse. The Alexanders will execute such documents as are necessary to withdraw and relinquish their claims to the cash and securities in the Seized Alexander Accounts, and will deliver said documents to the USAO, subject to its agreement to  hold these documents in escrow until the later of the date

on which appeals from a final order and judgment approving the Federal and State Derivative

Action settlements and this Settlement has expired, or appeals therefrom have been exhausted, at

which time the parties anticipate the USAO will file the documents as necessary to effectuate the

forfeiture of the assets in the Seized Alexander Accounts and will transfer those assets in the

accounts to Comverse pursuant to the order of restitution previously entered in *United States v.*

*William F. Sorin*, CR  06-0723(NGG)(RER).  Within forty-eight (48) hours after the receipt of

the assets in the Seized Alexander Accounts, Comverse shall wire or cause to be wired the cash

portion of such assets and transmit or cause to be transmitted the securities portion thereof  to the

Comverse Settlement Fund Escrow Account.

      (b)    Comverse shall wire or cause to be wired any monies received from the

Alexander Insurance and Pension Proceeds to the Comverse Settlement Fund Escrow Account

within forty-eight (48) hours after receipt. Alternatively, if any of the assets referred to in the

definition of Alexander Insurance and Pension Proceeds are transferred to Alexander in

exchange for a cash payment to Comverse equal to the value thereof, Comverse shall wire or

cause to be wired the payment received to the Comverse Settlement Fund Escrow Account

within forty-eight (48) hours after receipt.

      (c)    On or before June 30, 2010, Alexander shall wire to Comverse the amount

by which $60 million exceeds the sum of (i) the Alexander Insurance and Pension Proceeds (or

any cash received from Alexander in exchange for the transfer of any assets referred to in the

definition of the Alexander Insurance and Pension Proceeds) transferred by Comverse to the

Comverse Settlement Fund Escrow Account pursuant to ¶2.3(b); and (ii) the value of the Seized

Alexander Accounts as of December 31, 2009, as set forth in the account statements provided by

Wells Fargo Advisors, LLC and Morgan Stanley Smith Barney ("Additional Alexander

Payment"). Within forty eight (48) hours after receipt of the Additional Alexander Payment, Comverse shall wire or cause to be wired such funds to the Comverse Settlement Fund Escrow Account.

(d)     Within forty-eight (48) hours of the receipt by the Comverse Settlement Fund Escrow Account of payment by Alexander (or his designee) of an amount equal to the value of the Private Equity Securities as set out in the brokerage account statements as of December 31, 2009, less any cash that has been generated by the Private Equity Securities between December 31, 2009 and the date on which the Private Equity Securities are transferred to Alexander (or his designee) (the "Private Equity Purchase Price"), the Comverse Settlement Fund Escrow Account shall transfer the Private Equity Securities (including any securities distributed from the Private Equity Securities in kind) to Alexander's designee, or, if the USAO does not object, to Alexander.

(e)     In the event that cash proceeds realized through the liquidation of the Verint Systems, Inc. ("Verint") and Ulticom, Inc. ("Ulticom") stock portion in the Seized Alexander Accounts exceed the value of the Verint and Ulticom stock as set forth in the account statements on December 31, 2009, Lead Plaintiff shall cause an amount in cash equal to twenty five percent (25%) of such excess value to be wired from the Settlement Fund to Comverse within forty-eight (48) hours after receipt of such cash proceeds.

(f)     Comverse shall have no obligations or liabilities with respect to the payments to be made by Alexander except for the transfer thereof following receipt as provided for in this paragraph 2.3 to the Comverse Settlement Fund Escrow Account. By causing the funds to be paid to Comverse, Alexander will have satisfied his obligations under ¶ 2.3.

(g)     Comverse shall use its reasonable best efforts to issue or cause to be issued such legal opinions as shall be necessary to cause any legends on the certificates representing the shares of common stock of Ulticom and Verint held in the Seized Alexander Accounts that restrict transferability under the federal securities laws to be removed as soon as practicable after the Settlement Agreement Date.

(h)     Comverse and Alexander agree that they shall not seek dismissal of *Comverse Technology, Inc. v. Jacob "Kobi" Alexander,* No. 600142/08 (N.Y. Sup.) (hereinafter *"Comverse v. Alexander"*) or seek to vacate the Order of Attachment until such time as the payment obligations referenced in this ¶ 2.3 have been satisfied. Nothing in this section shall limit the ability of Comverse to release properties subject to the Order of Attachment, to the extent necessary, (i) to allow him to mortgage and/or sell such property to generate proceeds net of mortgages, taxes, and brokerage fees and other closing costs ("Net Proceeds") sufficient to fund the amounts due under this ¶ 2.3 and any penalty to be paid in settlement of *Securities and Exchange Commission v. Alexander et al.,* 06 Civ. 3844 (NGG) (RER) (E.D.N.Y.); and (ii) to allow him to sell such property, provided that the Net Proceeds from such sales (the "Additional Apartment Proceeds") are deposited into an escrow account pursuant to an escrow agreement between Alexander and Comverse, and subject to the Order of Attachment previously entered in *Comverse v. Alexander.* The Additional Apartment Proceeds may be used to satisfy any of the obligations of Alexander or his designee under this ¶ 2.3. Comverse and Alexander shall give Lead Plaintiff ten (10) days notice of actions to lift or modify the Order of Attachment and shall serve upon Lead Plaintiff any papers in furtherance of such proceeding. This ¶ 2.3(h) shall cease to be effective upon Alexander satisfying his payment obligations referenced in ¶ 2.3.

2.4     Within (48) hours of receipt of any of the assets or cash of the Seized Alexander Accounts pursuant to ¶¶ 2.3(a)-(e), or otherwise, Comverse shall wire or cause to be wired the cash portion of such assets and transmit or cause to be transmitted the securities portion thereof to the Comverse Settlement Fund Escrow Account.

### Payments to Settlement Fund of Proceeds
### from Sale of Non-UBS Auction Rate Securities

2.5     Comverse represents and warrants that, as of the Settlement Agreement Date, Comverse or a Subsidiary of Comverse is the owner of the Non-UBS Auction Rate Securities free and clear of all liens or encumbrances.  On or prior to the entry of the Judgment and Order of Dismissal with Prejudice, Lead Plaintiff, on behalf of the Class, Comverse and the applicable broker or bank at which an account containing Non-UBS Auction Rate Securities is held shall execute and deliver to each other Security and Account Control Agreements substantially in the form of Exhibit D hereto with respect to such account, pursuant to which, among other things, the Class will be granted a security interest in the Non-UBS Auction Rate Securities and any proceeds from the sale or other disposition thereof, and Lead Plaintiff will receive copies of monthly statements with respect to the accounts in which such securities are held and confirmation statements of each transaction effected in the Non-UBS Auction Rate Securities.

(a)     In the event that Comverse or any of its Subsidiaries shall receive net cash proceeds (after broker-dealer fees or commissions) from the sale or other disposition of Non-UBS Auction Rate Securities in an aggregate amount in excess of $50,000,000 (Fifty Million Dollars), Comverse shall, within ninety (90) days after receipt of such net proceeds, pay into the Settlement Fund Escrow Account:

(i)     $50,000,000 (Fifty Million Dollars) in satisfaction or partial satisfaction of the Unpaid Comverse Amount, or

(ii)      If the remaining Unpaid Comverse Amount is less than $50,000,000 (Fifty Million Dollars), the remaining Unpaid Comverse Amount in satisfaction thereof.

(b)      In the event that Comverse or any of its Subsidiaries shall receive net cash proceeds (after broker-dealer fees or commissions) from the sale or other disposition of Non-UBS Auction Rate Securities in an aggregate amount in excess of $100,000,000 (One Hundred Million Dollars), Comverse shall, within ninety (90) days after receipt of such net proceeds, pay into the Settlement Fund Escrow Account:

(i)      an additional $50,000,000 (Fifty Million Dollars) in satisfaction or partial satisfaction of any remaining Unpaid Comverse Amount, or

(ii)      If the remaining Unpaid Comverse Amount is less than $50,000,000 (Fifty Million Dollars), the remaining Unpaid Comverse Amount in satisfaction thereof.

2.6      Notwithstanding the number of days referenced for payment in ¶ 2.5, above, in no event shall any payment for any Unpaid Comverse Amount specified in ¶ 2.2(c) be paid later than February 15, 2011, and in no event shall any payment for any Unpaid Comverse Amount specified in ¶ 2.2(d) be paid later than August 15, 2011.

### Use of Settlement Shares as Payment Consideration

2.7      Subject to ¶¶ 2.8 and 2.9 (*infra*), in lieu of paying in cash for any or all of the amounts specified in ¶ 2.2(c) or ¶ 2.2(d), Comverse may elect to satisfy its payment obligations in respect of all or any portion of the amounts in ¶ 2.2(c) and ¶ 2.2 (d) by: (i) issuing Common Stock having an aggregate Fair Market Value equal to all or any Unpaid Comverse Amount specified in ¶ 2.2(c) on or before February 15, 2011; and/or (ii)  issuing Common Stock having an aggregate Fair Market Value equal to all or any Unpaid Comverse Amount specified in ¶

2.2(d) on or before August 15, 2011; provided, however, that Comverse may not issue shares of Common Stock in lieu of any such cash payment unless the aggregate Fair Market Value of Shares of Common Stock to be issued in lieu thereof on any one date shall be equal to or greater than $27,500,000 (Twenty-Seven Million Five Hundred Thousand Dollars).

2.8    If Comverse elects to issue Common Stock in lieu of cash pursuant to ¶ 2.7, it shall serve written notice on Lead Plaintiff and Lead Counsel, provided that such notice shall not be served (a) during customary trading hours on the principal national securities exchange on which the Common Stock is listed, or (b) no later than (i) fifteen (15) trading days prior to February 15, 2011 for any Unpaid Comverse Amount specified in ¶ 2.2(c); and/or (ii) fifteen (15) trading days prior to August 15, 2011 for any Unpaid Comverse Amount specified in ¶ 2.2(d).

2.9    As soon as practicable after Comverse serves notice on Lead Plaintiff and Lead Counsel of its election to issue Settlement Share pursuant to ¶ 2.8, (a) the portion of the Settlement Shares allocable to Lead Counsel under any award of fees by the Court shall be issued directly to Lead Counsel; and (b) the balance of such Settlement Shares to which Authorized Claimants shall be entitled shall be issued directly to:

(i)    each Authorized Claimant, provided that, prior to such issuance, the Claims Administrator has provided to the Company's Transfer Agent all information with respect to such Authorized Claimant requested by the Company's Transfer Agent in accordance with its customary procedures and instructions with respect to the issuance of securities, and

(ii)    the Comverse Technology Securities Litigation Settlement Fund in respect of all Authorized Claimants for which the information referred to in clause (i) above has not been provided by the Claims Administrator to the Transfer Agent, provided that Settlement

23

Shares issued to the Comverse Technology Securities Litigation Settlement Fund pursuant to this clause (ii) in respect of an Authorized Claimant shall be reissued directly to such Authorized Claimant upon the Transfer Agent's receipt of all requested information with respect to such Authorized Claimant as contemplated by clause (i) above.

  2.10 The Transfer Agent shall issue certificates evidencing Settlement Shares registered in the respective names of the Authorized Claimants or, if acceptable to Comverse and Lead Counsel (with such acceptance not to be unreasonably withheld), through "book-entry" registration, provided that all Settlement Shares issued directly to the Comverse Technology Securities Litigation Settlement Fund shall be registered only in "book-entry" form. The Claims Administrator shall use such  format as the Transfer Agent may reasonably prescribes to delivery to the Transfer Agent the information contemplated by clause ¶ 2.9 (i), above. The Transfer Agent, at its sole discretion, may request additional information from the Claims Administrator or any Authorized Claimant to effectuate the issuance of, and as a condition to issuing, Settlement Shares. Each of Comverse and the Transfer Agent has the right to rely on the accuracy and completeness of the information provided by the Claims Administrator or Authorized Claimants with respect to the issuance of Settlement Shares. Neither Comverse nor the Transfer Agent shall have any responsibility for, interest in, or liability whatsoever with respect to the accuracy or completeness of the information provided by the Claims Administrator or any Authorized Claimant in respect of the issuance of Settlement Shares pursuant to ¶ 2.9 and this ¶ 2.10, or any losses incurred in connection therewith. All Settlement Shares issued pursuant to ¶ 2.9 and this ¶ 2.10 shall be rounded to the nearest whole number of shares of Common Stock and no fractional shares shall be issued. Any Settlement Shares issued pursuant to ¶ 2.9 and ¶ 2.10 shall be listed on a national securities exchange and shall not bear any legend

restricting the transferability thereof. The reasonable costs and expenses of the Transfer Agent with respect to the issuance and delivery of Settlement Shares as contemplated by ¶ 2.9 and this ¶ 2.10 shall be paid by Comverse.

2.11    In the event that sufficient net proceeds from the sale of Non-UBS Auction Rate Securities are received by Comverse or any of its Subsidiaries so as to require a $50,000,000 (Fifty Million Dollars) cash payment in respect any Unpaid Comverse Amount as provided in ¶ 2.5, Comverse may not elect to issue and deliver Settlement Shares in lieu of such cash payment.

### Preservation of Consideration

2.12    The terms of this Settlement are binding upon Comverse and any successor to Comverse.

### Return of Funds in Certain Circumstances

2.13    Lead Plaintiff agrees that, prior to the Effective Date, the sum deposited into the Class Notice and Administration Fund Escrow Account shall be used solely to fund reasonable out-of-pocket costs and expenses relating to the printing, mailing and publication of notices to Class Members as described in ¶ 2.19, below. In the event that this Settlement Agreement is terminated prior to the occurrence of the Effective Date, the Escrow Agent shall refund to Comverse the balance remaining in the Class Notice and Administration Fund Escrow Account. In no event shall the Lead Plaintiff, Lead Counsel, or the Class be liable to Comverse for any sums used to fund such properly incurred out-of-pocket costs and expenses.

### Handling and Disbursement of Funds by the Escrow Agent

2.14    No monies will be disbursed from the Settlement Fund until after the Effective Date except:

(a)    As provided in ¶¶ 2.13, 2.17, and 7.2; and

(b)     To pay Taxes and Tax Expenses (as defined in ¶ 2.20) on the income earned by the Settlement Fund. Taxes and Tax Expenses shall be paid out of the Settlement Fund, shall be considered to be a cost of administration of the Settlement, and shall be timely paid by the Escrow Agent without prior Order of Court.

2.15    The Escrow Agent shall invest any funds deposited in any Escrow Account in excess of $1,000,000 (One Million Dollars) in short term United States Treasury Securities backed by the full faith and credit of the United States Government or fully insured by the United States Government, FDIC insured Certificate of Deposit Account Registry Service ("CDARS"), or accounts that invest solely in short term United States Treasury Securities, and shall reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates. Any funds held in an Escrow Account in an amount of $1,000,000 (One Million Dollars) or less may be held in a interest-bearing accounts insured by the FDIC.

2.16    The Escrow Agent shall not disburse the Settlement Fund except as provided in this Stipulation, by an order of the Court, or with the written agreement of Defendants' Counsel and Lead Counsel.

2.17    Subject to further order and/or direction as may be made by the Court, the Escrow Agents are authorized to execute such transactions on behalf of the Class as are consistent with the terms of this Stipulation.

2.18    All funds held by the Escrow Agents shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed or returned to the parties who deposited such funds pursuant to this Stipulation and/or further order(s) of the Court.

2.19   From and after the date the Court enters its order preliminarily approving the Settlement, funds held in the Class Notice and Administration Fund Escrow Account may be used to pay the reasonable fees and expenses incurred by, and the reasonable fees charged by, the Claims Administrator in connection with the administration and notice of the settlement upon presentation of customary invoices therefor, which invoices have been approved by Lead Counsel, including, without limitation:  the cost of identifying and locating members of the Class; mailing Notice and Proof of Claim and publishing the Publication Notice (such amounts shall include, without limitation, the actual costs of publication in American and Israeli national business publications and newswires, printing and mailing the Notice in both English and Hebrew, and reimbursement to nominee owners for forwarding notice to their beneficial owners); soliciting Class claims; assisting with the filing of claims, administering and distributing the Net Settlement Fund (as defined below) to Authorized Claimants,  processing Proof of Claim and Release forms, and paying escrow fees and costs, if any; and the administrative expenses incurred and fees charged by the Claims Administrator in connection with providing notice and processing the submitted claims.  Defendants shall have no responsibility or liability for the allocation of the Settlement Fund among the Class Members or the allocation of any awards of Plaintiffs' attorneys' fees, costs and expenses.  Any such awards shall be paid solely by the Settlement Fund.  Any residual monies held in the Class Notice and Administration Fund Escrow Account upon the completion of notice and claims administration for the Settlement shall be included in the Settlement Fund.

**Taxes**

2.20   (a)   The Parties and the Escrow Agents agree to treat the Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treasury Regulation

27

§1.468B-1. In addition, the Escrow Agents shall timely make such elections as necessary or advisable to carry out the provisions of this ¶ 2.20, including the "relation-back election" (as defined in Treasury Regulation §1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agents to timely and properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(b)     For purposes of §468B of the Internal Revenue Code of 1986, as amended, and Treasury Regulation §1.468B-2(k)(3) promulgated thereunder, the "administrator" shall be the Escrow Agents. The Escrow Agents shall timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including without limitation the returns described in Treasury Regulation §1.468B-2(k)). Such returns (as well as the election described in ¶ 2.20(a)) shall be consistent with this ¶ 2.20 and in all events shall reflect that all Taxes (including any estimated Taxes, interest or penalties) on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in ¶ 2.20(c) hereof.

(c)     All Taxes (including any estimated Taxes, interest or penalties) arising with respect to the income earned by the Settlement Fund, and expenses and costs incurred in connection with the operation and implementation of this ¶ 2.20 (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses or penalties relating to filing (or failing to file) the returns described in this ¶ 2.20) ("Tax Expenses"), shall be paid out of the Settlement Fund. Defendants, Defendants' Counsel, Lead Plaintiff, and Lead Counsel shall have no liability or responsibility for the Taxes or the Tax Expenses. Taxes and Tax Expenses shall be treated as, and considered to be a cost of

28

administration of the Settlement and shall be timely paid by the Escrow Agents out of the

Settlement Fund without prior order from the Court.  The Escrow Agents shall indemnify and

hold each of the Defendants and Defendants' Counsel harmless for Taxes and Tax Expenses

(including, without limitation, Taxes payable by reason of any such indemnification).  The

Escrow Agents shall be obligated (notwithstanding anything herein to the contrary) to withhold

from distribution to Authorized Claimants any funds necessary to pay such amounts,  including

the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts

that may be required to be withheld under Treasury Regulation §1.468B-2(l)(2)).  Neither

Defendants, Defendants' Counsel, Lead Plaintiff, nor Lead Counsel are responsible therefor, nor

shall they have any liability with respect thereto.  The parties hereto agree to cooperate with the

Escrow Agents, each other, and their tax attorneys and accountants to the extent reasonably

necessary to carry out the provisions of this ¶ 2.20.  Defendants' Counsel agree to promptly

provide the Escrow Agents with the statement described in Treasury Regulation §1.468B-3(e).

      (d)    For the purpose of this ¶ 2.20, references to the Settlement Fund shall

include both the Settlement Fund and Class Notice and Administration Fund, and shall also

include any earnings thereon.

### Termination of Settlement

2.21    Lead Plaintiff, on behalf of the Class, or Defendants, and any of them, shall have

the right to terminate the Settlement and this Stipulation as to themselves by providing written

notice of their election to do so ("Termination Notice") to all other Parties hereto within five (5)

business days of:  (i) the Court's declining to enter the Order for Notice and Hearing

substantially in the form attached as Exhibit A, hereto; (ii) the Court's refusal to approve this

Stipulation or any material part of it; (iii) the Court's declining to enter the Judgment and Order

of Dismissal with Prejudice in any material respect; or (iv) the date upon which the Judgment

and Order of Dismissal with Prejudice is modified or reversed in any material respect by the

Court of Appeals or the Supreme Court.

2.22    If prior to the Settlement Hearing any persons who otherwise would be members

of the Class have timely filed exclusion from the Class in accordance with the provisions of the

Order for Notice and Hearing and the notice given pursuant thereto, and such persons in the

aggregate purchased a number of shares of Common Stock during the Class Period in an amount

greater than the sum specified in a separate "Supplemental Agreement" between the Parties, or

should certain other events occur, Comverse and Alexander shall have, in their sole discretion,

the option to terminate this Stipulation  in accordance with the procedures set forth in the

Supplemental Agreement.  The Supplemental Agreement will not be filed with the Court unless

and until a dispute among the Parties concerning its interpretation or application arises.

2.23    Alexander shall have the right to terminate the Settlement and this Stipulation if

any of the following conditions fail to occur either before or after final approval (collectively

referred to as the "Approval Triggering Events"):

(a)    The United States District Court for the Eastern District of New York and

the Supreme Court of the State of New York, New York County, each enter an Order and Final

Judgment approving in all material respects the Stipulation of Compromise and Settlement in *In*

*re Comverse Technology, Inc. Derivative Litigation*, No. 601272/06, pending in the Supreme

Court of the State of New York, New York County, and *In re Comverse Technology, Inc.*

*Derivative Litigation*, 06 Civ. 1849 (NGG) (RER), pending in the United States District Court

for the Eastern District of New York (collectively, the "Derivative Actions"); and the orders

dismissing and discontinuing with prejudice the claims against Alexander in the Derivative

Actions become Final;

(b)     In the action titled *Securities and Exchange Commission v. Alexander et al.*, 06 Civ. 3844 (NGG) (RER) (E.D.N.Y.), (a) the SEC will grant approval of a settlement on terms agreed to by Mr. Alexander and the SEC staff, and (b) a consent judgment entered by the United States District Court for the Eastern District of New York will become Final;

(c)     In connection with the action titled *United States v. All Funds on Deposit at Citigroup Smith Barney Account No. 600-00338, Held in the Name of Kobi Alexander and Citigroup Smith Barney Account No. 600-27694 Held in the Name of Kobi J. Alexander*, 06 Civ. 3730 (NGG) (RER), (a) the United States District Court for the Eastern District of New York (i) grants final approval of a settlement on terms agreed to by Mr. Alexander, and (ii) issues an order dismissing the action with prejudice, which becomes Final; and (b) the government promptly disburses to Comverse the Seized Alexander Accounts; and

(d)     An order of the  Supreme Court of the State of New York, New York County discontinuing with prejudice the action titled *Comverse Technology, Inc. v. Alexander*, No. 08/600142, becomes Final.

2.24    Notice of the right to terminate and withdraw from the Stipulation must be sent by email and overnight delivery to Class Counsel Patrick V. Dahlstrom of the law firm Pomerantz Haudek Grossman & Gross LLP, Ten South La Salle Street, Suite 3505, Chicago, Illinois 60603, pdahlstrom@pomlaw.com, no later than ten (10) business days after counsel for Mr. Alexander receives notice or believes that an Approval Triggering Event has failed to occur.  If not served within that period, the option to terminate and withdraw as to that Approval Triggering Event shall lapse and be of no further force and effect.

2.25    Notwithstanding Alexander's timely notice of withdrawal and termination from

the Stipulation, (a) the Settlement and Stipulation between the Class and all Defendants other than Alexander shall continue in full force and effect on the terms described herein; (b) Comverse shall only owe to the Class the total consideration of $165 million as set forth above; and (c) Comverse shall not take any steps to withdraw, dismiss or discontinue its action titled *Comverse Technology, Inc. v. Alexander*, No. 08/600142, or the Order of Attachment, except as necessary to permit the Class to execute any judgment against, or settlement with, Alexander up to the amount of $60 million.  Further, the net proceeds (after out of pocket expenses) recovered by either Comverse or the Class from Mr. Alexander shall be shared as follows (irrespective of whether Comverse or the Class obtains the recovery): the first $60 million of recovery will be for the benefit of the Class and any recovery in excess of $60 million will be shared equally by the Class and Comverse. Within ten (10) business days of receiving notice that Alexander has exercised his right to terminate the Settlement under ¶ 2.23, the Escrow Agent shall return the payments set forth in ¶¶ 2.3(b), (c) and (d) to  an escrow account jointly established by counsel for Comverse and counsel for Alexander at a mutually agreeable federally chartered bank.

2.26     The Final Hearing shall be scheduled no earlier than February 22, 2010, and may be postponed without further notice to the Class in the event that Comverse postpones the filing of the Comprehensive Form 10-K (unless Comverse and Alexander otherwise waive their rights to terminate the Settlement and this Stipulation under ¶ 2.23).

**D.     Class Certification**

3.1     The Parties hereby stipulate to certification of the Class, pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, solely for purposes of this Settlement.  The certification of the Class shall be binding only with respect to the Settlement and only if the Judgment becomes Final.

### E.   Order for Notice of Settlement Hearing

4.1     Promptly after execution of this Stipulation, Lead Counsel and Defendants'
Counsel shall jointly submit this Stipulation together with its Exhibits to the Court and shall
apply for preliminary approval of the Settlement set forth in this Stipulation, entry of an Order
for Notice and Hearing, approval for the mailing and publication of the Notice and Publication
Notice, substantially in the form of Exhibits A-1 and A-3 hereto, which shall include the general
terms of the Settlement set forth in this Stipulation, the proposed Plan of Allocation, the general
terms of the "Fee and Expense Application" (as defined in ¶ 7.1) and the date of the Settlement
Hearing as defined below.

4.2     At the time of the joint submission described in ¶ 4.1, Lead Counsel and
Defendants' Counsel shall also jointly request that, after Notice is given, the Court hold a
hearing (the "Settlement Hearing"), certify the Class, and approve the Settlement of the Action
as set forth herein.   At or after the Settlement Hearing, Lead Counsel also will request that the
Court approve the proposed Plan of Allocation, the Fee and Expense Application, and the
Compensatory Award.

4.3     Any Class Member who wishes to object to the fairness, reasonableness or
adequacy of this Stipulation, to the Plan of Allocation, to any term(s) of this Stipulation, to the
Fee and Expense Application, or to the Compensatory Award must both effect service on Lead
Counsel and Defendants' Counsel and file with the Court by no later than twenty-one (21) days
before the Settlement Hearing, or as the Court may otherwise direct, a statement of his, her or its
objection(s); *provided however*, that a potential Class Member who submits a Request for
Exclusion, as defined below, from the Class shall not be able to submit an objection. If a Class
Member timely and properly serves and files written objections, as set forth in this paragraph,

Lead Counsel and Defendants' Counsel may, as they deem appropriate, submit papers in support of the Stipulation, the Plan of Allocation, any term(s) of this Stipulation, to the Fee and Expense Application, or to the Compensatory Award no later than ten (10) days before the Settlement Hearing.

4.4     The statement of objection of the Class Member shall state (i) whether the Class Member is a Class Member, (ii) which part of this Stipulation the Class Member objects to and (iii) the specific reason(s), if any, for each such objection made by the Class Member, including any legal support the Class Member wishes to bring to the Court's attention and any evidence the Class Member wishes to introduce in support of such objection. Such Class Member shall also provide documentation sufficient to establish the amount of publicly traded Comverse securities purchased and sold, and the prices and dates of each transaction. Failure to provide such information and documentation shall be grounds to void the objection.

4.5     Any Class Member who fails to comply with any of the provisions of Section E shall waive and forfeit any and all rights he, she or it may otherwise have to appear separately at the Settlement Hearing and/or to object to this Stipulation, and shall be bound by all the terms of this Stipulation, and by all proceedings, orders and judgments in the Action.

**F.     Releases**

5.1     The obligations incurred pursuant to this Stipulation shall be a full and final disposition of the Action, any and all Released Plaintiffs' Claims, and any and all Released Defendants' Claims, as against all Released Parties.

5.2     Upon the Effective Date, Lead Plaintiff, on behalf of itself, its Released Parties and the Class, shall be deemed to have, and by operation of the Judgment and Order of Dismissal with Prejudice shall have, fully, finally, and forever released, relinquished and discharged all

34

Released Plaintiffs' Claims against Defendants, and each of them, and any and all of their Released Parties, whether or not any individual Class Member executes and delivers the Proof of Claim. Delivery of a Proof of Claim executed by a Class Member shall release all Released Plaintiffs' Claims against the Defendants and their Released Parties.

5.3     Upon the Effective Date, Defendants, and each of them, on behalf of themselves and their Released Parties shall be deemed to have, and by operation of the Judgment and Order of Dismissal with Prejudice shall have, fully, finally, and forever released, relinquished and discharged all Released Defendants' Claims against Lead Plaintiff and any and all of its Released Parties including, but not limited to, Plaintiffs' Counsel.

5.4     Only those Class Members filing valid and timely Proof of Claim and Release forms shall be entitled to participate in the Settlement and receive a distribution from the Settlement Fund. The Proof of Claim and Release to be executed by Class Members shall release all Released Plaintiffs' Claims against the Released Persons, and shall be substantially in the form contained in Exhibit A-2 attached hereto. All Class Members not submitting valid and timely requests for exclusion shall be bound by the releases set forth in this Section F, whether or not they submit a valid and timely Proof of Claim and Release.

**G.     Administration and Calculation of Claims, Final Awards, And Supervision and Distribution of the Settlement Fund**

6.1     The Claims Administrator shall administer and calculate the claims submitted by Class Members and shall oversee distribution of the Net Settlement Fund (defined below) to Authorized Claimants. The distribution checks will be drawn upon the accounts invested by the Escrow Agent.

6.2     The Settlement Fund shall be applied as follows:

(i)     To pay the Taxes and Tax Expenses described in ¶ 2.20 above;

(ii)     To pay all the costs and expenses reasonably and actually incurred in connection with settlement administration, including, but not limited to, locating members of the Class, providing Notice, soliciting Class claims, assisting with the filing of claims, processing Proof of Claim forms, making administrative determinations concerning the acceptance or rejection of submitted claims, administering and distributing the Settlement Fund to Authorized Claimants, paying escrow fees and costs, if any, and paying the fees and expenses of the Claims Administrator;

(iii)    To pay Lead Counsel's attorneys' fees, and expenses with interest thereon, as provided in ¶ 7.2 (the "Fee and Expense Award"), to the extent allowed by the Court;

(iv)    To pay a Compensatory Award to Lead Plaintiff as provided in ¶ 7.6, to the extent allowed by the Court;

(v)     To pay the Claims Administrator's fees and expenses reasonably incurred in the claims administration of the Settlement; and

(vi)    To distribute the balance of the Settlement Fund, that is, the total Settlement Fund less the items set forth in ¶¶ 6.2(i), (ii), (iii), (iv) and (v) (the "Net Settlement Fund"), and, thereafter, to the Authorized Claimants as allowed by this Stipulation, the Plan of Allocation, or the Court.

6.3     Upon the entry of the Judgment and Order of Dismissal with Prejudice and thereafter, subject to ¶ 2.14 and in accordance with the terms of the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed to Authorized Claimants subject to and in accordance with the following:

(i)  Any Person falling within the definition of the Class may be excluded from the Class by submitting to the Claims Administrator a request for exclusion ("Request for Exclusion"), which complies with the requirements set forth in the Order for Notice and Hearing, Exhibit A hereto, and is postmarked no later than twenty-one (21) days prior to the date of the Settlement Hearing. All Persons who submit valid and timely Requests for Exclusion shall have no rights under the Stipulation, shall not share in the distribution of the Net Settlement Fund, and shall not be bound by the Stipulation or the Judgment and Order of Dismissal with Prejudice. However, a Class Member may submit a written revocation of a Request for Exclusion up until the Bar Date (defined below) and receive payments pursuant to this Stipulation and Settlement provided the Class Member also submits a valid Proof of Claim, as set forth in ¶ 6.3(ii), below, prior to the Bar Date;

(ii)  By forty-five (45) days after the Settlement Hearing, or such other time as may be set by the Court (the "Bar Date"), each Class Member claiming to be an Authorized Claimant shall be required to submit to the Claims Administrator a completed Proof of Claim, substantially in the form of Exhibit A-2 hereto, signed under penalty of perjury and supported by such documents as specified in the Proof of Claim or such other documents or proof, as are reasonably available to the Authorized Claimant, as Lead Counsel, in their discretion, may deem acceptable;

(iii)  Except as otherwise ordered by the Court, all Class Members who fail to timely submit a Proof of Claim and Release by the Bar Date, or such other period as may be ordered by the Court, or otherwise allowed, or who file a Proof of Claim that is rejected, shall be forever barred from receiving any payments pursuant to this Stipulation and Settlement, but will in all other respects be subject to and bound by the provisions of this Stipulation, the releases

contained herein, and the Judgment and Order of Dismissal with Prejudice and will be barred and enjoined from bringing any action against the Released Parties concerning the Settled Claims.

6.4     No Person shall have any claim against Lead Plaintiff, Lead Counsel, Defendants' Counsel, the Claims Administrator or any other agent designated by Lead Counsel based on distribution determinations or claim rejections made substantially in accordance with this Stipulation and the Settlement contained therein, the Plan of Allocation, or further orders of the Court.  The Net Settlement Fund shall be distributed to the Authorized Claimants substantially in accordance with a Plan of Allocation to be described in the Notice and approved by the Court. However, any balance remaining in the Net Settlement Fund after six (6) months from the date of distribution of the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise) the Claims Administrator under the supervision of Lead Counsel shall, if feasible, reallocate such balance among Authorized Claimants in an equitable and economic fashion. Thereafter, any balance that still remains in the Net Settlement Fund shall be donated to such not-for-profit as the Court may direct and approve.  This is not a claims-made settlement and, if all conditions of the Stipulation are satisfied and the Settlement becomes final, no portion of the Settlement Fund will be returned to the Defendants or their insurance carriers.  Defendants and their Corresponding Related Parties shall have no responsibility for, interest in, or liability whatsoever with respect to the distribution of the Net Settlement Fund, the Plan of Allocation, the determination, administration, or calculation of claims, the payment or withholding of Taxes or Tax Expenses, or any losses incurred in connection therewith.

6.5     It is understood and agreed by the Parties that any proposed Plan of Allocation of the Net Settlement Fund including, but not limited to, any adjustments to an Authorized Claimant's claim set forth therein, is not a part of this Stipulation and is to be considered by the

Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement set forth in this Stipulation, and any order or proceedings relating to the Plan of Allocation shall not operate to terminate or cancel this Stipulation or affect the finality of the Court's Judgment and Order of Dismissal with Prejudice approving this Stipulation and the Settlement set forth therein, or any other orders entered pursuant to this Stipulation.

6.6     After notice is given, Lead Counsel will request that the Court approve the proposed Plan of Allocation, the Fee and Expense Application, and the Compensatory Award, and the Parties shall request and obtain from the Court a Judgment and Order of Dismissal with Prejudice substantially in the form attached to this Agreement as Exhibit B.

**H.     Attorneys' Fees and Expenses, and Lead Plaintiff's Compensatory Award**

7.1     Lead Counsel may submit an application or applications (the "Fee and Expense Application") for distributions to Lead Counsel from the Settlement Fund and the Settlement Shares (if any) for: (a) an award of attorneys' fees; plus (b) reimbursement of actual costs and expenses, including experts or consultants, incurred in connection with prosecuting the Action plus any interest on such attorneys' fees, costs and expenses at the same rate and for the same periods as earned by the Gross Settlement Fund (until paid) as may be awarded by the Court. Lead Counsel reserves the right to make additional applications for fees and expenses incurred, if necessary.

7.2     The attorneys' fees and expenses, including the fees and expenses of experts and consultants, as awarded by the Court, shall be payable to Lead Counsel from the Settlement Fund and the Settlement Shares (if any), as ordered, upon the entry of the Court's order awarding such fees and expenses.  Subject to the terms of payment in ¶¶ 2.2-2.4, (i) payments for attorneys' fees and expenses in cash shall be paid to Lead Counsel five (5) Business Days after either receipt of

the proceeds into the Settlement Fund and; (ii) payments for attorneys' fees and expenses in Settlement Shares shall be delivered to Lead Counsel five (5) Business Days after the designation of Common Stock in lieu of a cash payment pursuant to ¶ 2.7 is made by Comverse, for which Comverse shall provide such assistance to arrange for the transfer to Lead Counsel of its proportionate share of the Settlement Shares as Comverse is required to provide (and bear such expenses as it is required to bear) in respect of the transfer of Settlement Shares pursuant to ¶ 2.7. Lead Counsel agrees to refund to the Settlement Fund any award of attorney's fees and expenses by the Court paid to Lead Counsel in the event the Court's award of attorney's fees and expenses is reduced or reversed on appeal (the "Fee Award"); payment of some or all of the Fee Award shall be made by Lead Counsel into the Settlement Fund within five (5) Business Days of a Final order by the Court of Appeals or the Supreme Court directing such reduction or reversal, and shall be distributed by the Escrow Agent to the Class pursuant to the manner directed in the Final order.

7.3     The procedure for and allowance or disallowance by the Court of any application by Lead Counsel for attorneys' fees and expenses, including the fees and expenses of experts and consultants, to be paid out of the Settlement Fund or the Settlement Shares, are not part of the Settlement set forth in this Stipulation and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement set forth in this Stipulation, and any order or proceedings relating to the Fee and Expense Application, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to modify, terminate or cancel this Stipulation, or affect or delay the finality of the Judgment and Order of Dismissal with Prejudice approving this Stipulation and the Settlement of the Litigation.

7.4     Except as provided in ¶ 7.2, Defendants and their Released Parties shall have no responsibility for, and no liability whatsoever with respect to, any payment to Lead Counsel or any other Plaintiffs' Counsel and/or any other Person who receives payment from the Settlement Fund.

7.5     Defendants and their Released Parties shall have no responsibility for, and no liability whatsoever with respect to, the allocation among Lead Counsel and/or any other Person who may assert some claim thereto, of any Fee and Expense Award that the Court may make in the Action.

7.6     Lead Counsel may submit an application to the Court to authorize the payment of a Compensatory Award for the time and expenses expended by Lead Plaintiff in assisting Lead Counsel in the litigation of this Action.  Subject to the payment terms in ¶¶ 2.2(b)-(d) and ¶¶ 2.3 (a)-(b), payment for any Compensatory Award payable in cash shall be payable to Lead Plaintiff five (5) days after the Effective Date.

**I.      Effect of Disapproval, Cancellation or Termination**

8.1     Any appeal or delay in (a) the approval of the Plan of Allocation, (b) the determination of any award of attorneys' fees and expenses, or (c) the granting of a Compensatory Award to Lead Plaintiff shall not affect, alter, or delay the occurrence of the Effective Date.

8.2     Upon the occurrence of the Effective Date, any and all interest or right of Defendants in or to the Settlement Fund, if any, shall be absolutely and forever extinguished, except as set forth in this Stipulation.  The Settlement Fund shall be distributed in accordance with ¶ 6.2 hereof.

8.3     In the event that this Stipulation is not approved by the Court, or the Effective Date does not occur, then this Stipulation shall be canceled and terminated subject to ¶ 8.4 unless Lead Counsel and Defendants' Counsel mutually agree in writing to proceed with this Stipulation.  None of the Parties, or any of them, shall have any obligation whatsoever to proceed under any terms other than provided for and agreed herein.  Without limitation of any Party's other rights or remedies at law or in equity to enforce its rights against any other Party that breaches its obligations under this Stipulation, no breach by any Party of its obligations under this Stipulation shall permit any other Party to terminate this Stipulation or, after the Effective Date, affect or impair the disposition of the Action or release of claims contemplated by ¶ 5.1.

8.4     If this Stipulation is terminated or fails to become effective for the reasons set forth in ¶ 8.3, this Settlement Agreement shall be void *ab initio*, provided that unless otherwise ordered by the Court within ten Business Days after the occurrence of such event,- any amount then remaining in the Class Notice and Administration Fund (including accrued interest) and/or the Comverse Settlement Fund Escrow Account (including accrued interest), less taxes, expenses and any costs which have either been therefrom in accordance with this Stipulation or are determined to be chargeable to the Class Notice and Administration Fund pursuant to this Stipulation (but in no event exceeding the sum of $1,000,000) or the Comverse Settlement Fund Escrow Account, shall be refunded by the Escrow Agent, pursuant to written instructions from Comverse or its successor-in-interest. If this Stipulation is terminated for reasons set forth in ¶ 2.23, it shall be void *ab initio* as to Alexander, provided that any amount deposited into the Comverse Settlement Fund Escrow Account pursuant to ¶¶ 2.3 (b), (c) and/or (d) shall be refunded by the Escrow Agent to an escrow account jointly established by counsel for Comverse and counsel for Alexander at a mutually agreeable federally chartered bank, pursuant to written

42

instructions from Comverse or its successor-in-interest and Alexander. Such termination shall have no affect upon Comverse's agreement.  In the event that the Stipulation is not approved by the Court or the Settlement set forth in this Stipulation is terminated or fails to become effective in accordance with its terms, the terms and provisions of this Stipulation, with the exception of ¶¶ 1.1-1.53, 2.2(a), 2.19, 2.20 and 8.3-8.5 hereof, shall have no further force and effect with respect to the settling Parties and shall not be used in this Action or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of this Stipulation shall be treated as vacated, *nunc pro tunc*.  No order of the Court or modification or reversal on appeal of any order of the Court concerning the Plan of Allocation or the amount of any attorneys' fees, costs, expenses and interest awarded by the Court to Lead Counsel shall constitute grounds for cancellation or termination of the Stipulation.

8.5     If the Effective Date does not occur, neither Lead Plaintiff nor Lead Counsel shall have any obligation to repay any amounts actually and properly disbursed from the Class Notice and Administration Fund.  In addition, any expenses already incurred and properly chargeable to the Class Notice and Administration Fund pursuant to this Stipulation at the time of such termination or cancellation, but which have not been paid, shall be paid by the Escrow Agents in accordance with the terms of the Stipulation prior to the balance being refunded in accordance with ¶ 8.4.

### J.     Miscellaneous Provisions

9.1     The Parties (a) acknowledge that it is their intent to consummate this agreement; and (b) agree, subject to their fiduciary and other legal obligations, to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Stipulation and to exercise their reasonable best efforts to accomplish the foregoing terms and conditions of this

Stipulation.  Lead Counsel and Defendants' Counsel agree to cooperate with one another in seeking Court approval of the Order for Notice of Hearing, the Stipulation, and the Settlement, and to promptly agree upon and execute all such other documentation as may be reasonably required to obtain final approval of the Settlement.

9.2    The  Parties intend this Stipulation to be a final and complete resolution of all disputes between them with respect to the Action as well as any disputes which could have been raised in the Action by Lead Plaintiff, the Class, and their Released Parties, and each or any of them, against Defendants and their Released Parties, Defendants' Counsel, and each or any of them, on the one hand, and by Defendants and their Released Parties, and each or any of them, against Lead Plaintiff, the Class, their Released Parties, Lead Counsel, and each or any of them, on the other hand.  Additionally, as among and between Defendants and their Released Parties, and each or any of them, Defendants intend this Stipulation to be a final and complete resolution of all disputes between them with respect to the Action.  Notwithstanding the foregoing, Comverse and Alexander have entered into a separate agreement and releases which apply to disputes between them.  Accordingly, the Parties agree not to assert in any forum that the Action was brought by Lead Plaintiff or defended by any the Defendants, or each or any of them, in bad faith or without a reasonable basis.  The Judgment and Order of Dismissal with Prejudice will contain a statement that during the course of the Action, the parties and their respective counsel at all times complied with the requirements of Rule 11 of the Federal Rules of Civil Procedure. The Parties further agree that the amount paid to the Settlement Fund and the other terms of the Settlement were negotiated at arm's length and in good faith by the Parties, and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.

9.3    Whether or not the Effective Date occurs or this Stipulation is terminated, neither this Stipulation nor the Settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of this Stipulation or the Settlement:

(i)    may be deemed, or shall be used, offered or received against Defendants or Defendants' Released Parties, or each or any of them, as an admission, concession or evidence of, the validity of any Released Plaintiffs' Claims, the truth of any fact alleged by Plaintiffs, the deficiency of any defense that has been or could have been asserted in the litigation, or of any alleged wrongdoing, liability, negligence, or fault of the Defendants and their Released Parties, or any of them;

(ii)   may be deemed, or shall be used, offered or received against Defendants, or each or any of them, as an admission, concession or evidence of, any fault, misrepresentation or omission with respect to any statement or written document approved or made by any Defendant and their Released Parties, or any of them;

(iii)  may be deemed, or shall be used, offered or received against Lead Plaintiff, the Class, Lead Plaintiff's Released Parties, or each or any of them, as an admission, concession or evidence of, the validity or invalidity of any of Released Defendants' Claims, the infirmity or strength of any claims raised in the Action, the truth or falsity of any fact alleged by Defendants, or the availability or lack of availability of meritorious defenses to the claims raised in the Action;

(iv)   may be deemed, or shall be used, offered or received against Lead Plaintiff, the Class, and Lead Plaintiff's Released Parties, or each or any of them, or against Defendants, Defendants' Released Parties, or each or any of them, as an admission or concession with respect to any liability, fault or wrongdoing as against any Parties to the Stipulation, in any

45

civil, criminal or administrative proceeding in any court, administrative agency or other tribunal. However, the Settlement, this Stipulation, and any acts performed and/or documents executed in furtherance of or pursuant to this Stipulation and/or Settlement may be used in any proceedings as may be necessary to effectuate the provisions of this Stipulation. However, if this Stipulation is approved by the Court, any party or any of the Released Parties may file this Stipulation and/or the Final Order and Judgment in any action that may be brought against such party or parties in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim;

(v)     may be deemed, or shall be construed against Lead Plaintiff, the Class, and Lead Plaintiff's Released Parties, or each or any of them, or against Defendants, Defendants' Released Parties, or each or any of them, as an admission or concession that the consideration to be given hereunder represents an amount equal to, less than or greater than that amount which could have or would have been recovered after trial; and

(vi)     may be deemed, or shall be construed as or received in evidence as an admission or concession against Lead Plaintiff, the Class, and Lead Plaintiff's Released Parties, or each and any of them, or against Defendants, Defendants' Released Parties, or each or any of them, that any of their claims are with or without merit or that damages recoverable under the Complaint would have exceeded or would have been less than the Settlement Fund.

9.4     The headings used herein are used for the purpose of convenience only and are not meant to have legal effect.

9.5     The waiver by one party of any breach of this Stipulation by any other party shall not be deemed as a waiver of any other prior or subsequent breaches of this Stipulation.

46

9.6     All of the Exhibits to this Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

9.7     This Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

9.8     This Stipulation and the Exhibits attached hereto constitute the entire agreement among the parties hereto and no representations, warranties or inducements have been made to any party concerning this Stipulation or its Exhibits other than the representations, warranties and covenants contained and memorialized in such documents.  Except as otherwise provided herein, each Party shall bear its own costs.

9.9     Each counsel or other Person executing this Stipulation, any of its Exhibits, or any related settlement documents on behalf of any party hereto hereby warrants and represents that such Person has the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

9.10     This Stipulation may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the Parties to this Stipulation all exchange original signed counterparts.

9.11     This Stipulation shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto and their Released Parties.

9.12     The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Stipulation, and all parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in this Stipulation.

9.13     This Stipulation and the Exhibits thereto shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of New York and the rights and obligations of the parties to this Stipulation shall be construed and enforced in accordance with, and governed by, the internal, substantive laws of the State of New York without giving effect to that State's choice of law principles.

9.14     This Stipulation is deemed to have been prepared by counsel for all parties, as a result of arm's length negotiations among the parties.  Whereas all parties have contributed substantially and materially to the preparation of this Stipulation, it shall not be construed more strictly against one party than another.

9.15     Whenever this Stipulation requires or contemplates that a Party shall or may give notice to the other, notice shall be provided by facsimile, electronic mail, or next-day (excluding Saturday and Sunday) express delivery service as follows and shall be deemed effective upon such transmission or delivery, to the facsimile number or address, as the case may be, set forth below:

If to Comverse, then to:

> Joseph S. Allerhand, Esq.
> Matthew L. Mustokoff, Esq.
> **WEIL, GOTSHAL & MANGES, LLP**
> 767 Fifth Avenue
> New York, New York 10153
> Telephone:      (212) 310-8000
> Facsimile:      (212) 310-8007

If to Alexander, then to:

> Edward M. Spiro, Esq.
> Jeremy H. Temkin, Esq.
> **MORVILLO, ABRAMOWITZ, GRAND,**
> **IASON ANELLO & BOHRER, P.C.**
> 565 Fifth Avenue
> New York, New York 10017
> Telephone:    (212) 856-9600
> Facsimile:    (212) 856-9494

If to Lead Plaintiff, then to:

> Patrick V. Dahlstrom, Esq.
> **POMERANTZ HAUDEK**
> **GROSSMAN & GROSS LLP**
> Ten South La Salle Street
> Suite 3505
> Chicago, Illinois 60603
> Telephone:    (312) 377-1181
> Facsimile:    (312) 377-1184

> or

> Marc I. Gross, Esq.
> **POMERANTZ HAUDEK**
> **GROSSMAN & GROSS LLP**
> 100 Park Avenue
> New York, New York 10017
> Telephone:    (212) 661-1100
> Facsimile:    (212) 661-8665

9.16    All time periods set forth herein shall be computed in calendar days unless otherwise expressly provided. In computing any period of time prescribed or allowed by this Stipulation or by order of court, the day of the act, event, or default from which the designated period of time begins to run shall not be included.

9.17    The Parties reserve the right, subject to the Court's approval, to make any reasonable extensions of time that might be necessary to carry out any of the provisions of this Stipulation.

Dated: December 16, 2009

POMERANTZ HAUDEK
GROSSMAN & GROSS LLP

_(signature)_

Patrick V. Dahlstrom, Esq.
Ten South La Salle Street
Suite 3505
Chicago, Illinois 60603
Telephone:     (312) 377-1181
Facsimile:      (312) 377-1184

Stanley M. Grossman, Esq.
Marc I. Gross, Esq.
Daniel L. Berger, Esq.
Jeremy A. Lieberman, Esq.
Fei-Lu Qian, Esq.
Tamar A. Weinrib, Esq.

POMERANTZ HAUDEK
GROSSMAN & GROSS LLP
100 Park Avenue
New York, New York 10017
Telephone:     (212) 661-1100
Facsimile:      (212) 661-8665

*Attorneys for the Lead Plaintiff*
*Menorah Group and The Class*

WEIL, GOTSHAL & MANGES, LLP

Joseph S. Allerhand, Esq.
David E. Zeltner, Esq.
Matthew L. Mustokoff, Esq.
767 Fifth Avenue
New York, New York 10153
Telephone:     (212) 310-8000
Facsimile:     (212) 310-8007

*Attorneys for Defendant*
*Comverse Technology, Inc.*


**MORVILLO, ABRAMOWITZ, GRAND,
IASON ANELLO & BOHRER, P.C.**

Robert G. Morvillo, Esq.
Edward M. Spiro, Esq.
Jeremy H. Temkin, Esq.
Erica Sparkler, Esq.
565 Fifth Avenue
New York, New York 10017
Telephone:     (212) 856-9600
Facsimile:     (212) 856-9494

*Attorneys for Defendant*
*Jacob "Kobi" Alexander*


**DECHERT, LLP**

David S. Hoffner, Esq.
Scott Smedley, Esq.
1095 Avenue of the Americas
New York, New York 10036
Telephone:     (212) 698-3500
Facsimile:     (212) 698-3599

*Attorneys for Defendant David Kreinberg*

51

WEIL, GOTSHAL & MANGES, LLP

---

Joseph S. Allerhand, Esq.
David E. Zeltner, Esq.
Matthew L. Mustokoff, Esq.
767 Fifth Avenue
New York, New York 10153
Telephone:     (212) 310-8000
Facsimile:     (212) 310-8007

*Attorneys for Defendant*
*Comverse Technology, Inc.*

MORVILLO, ABRAMOWITZ, GRAND,
IASON ANELLO & BOHRER, P.C.

---

Robert G. Morvillo, Esq.
Edward M. Spiro, Esq.
Jeremy H. Temkin, Esq.
Erica Sparkler, Esq.
565 Fifth Avenue
New York, New York 10017
Telephone:     (212) 856-9600
Facsimile:     (212) 856-9494

*Attorneys for Defendant*
*Jacob "Kobi" Alexander*

DECHERT, LLP

---

David S. Hoffner, Esq.
Scott Smedley, Esq.
1095 Avenue of the Americas
New York, New York 10036
Telephone:     (212) 698-3500
Facsimile:     (212) 698-3599

*Attorneys for Defendant David Kreinberg*

51

**WEIL, GOTSHAL & MANGES, LLP**

---

Joseph S. Allerhand, Esq.
David E. Zeltner, Esq.
Matthew L. Mustokoff, Esq.
767 Fifth Avenue
New York, New York 10153
Telephone:     (212) 310-8000
Facsimile:     (212) 310-8007

*Attorneys for Defendant*
*Comverse Technology, Inc.*

**MORVILLO, ABRAMOWITZ, GRAND,**
**IASON ANELLO & BOHRER, P.C.**

---

Robert G. Morvillo, Esq.
Edward M. Spiro, Esq.
Jeremy H. Temkin, Esq.
Erica Sparkler, Esq.
565 Fifth Avenue
New York, New York 10017
Telephone:     (212) 856-9600
Facsimile:     (212) 856-9494

*Attorneys for Defendant*
*Jacob "Kobi" Alexander*

**DECHERT, LLP**

---

David S. Hoffner, Esq.
Scott Smedley, Esq.
1095 Avenue of the Americas
New York, New York 10036
Telephone:     (212) 698-3500
Facsimile:     (212) 698-3599

*Attorneys for Defendant David Kreinberg*

51

LAW OFFICES OF SOLOMON N. KLEIN

_____

Solomon N. Klein, Esq.
1410 Broadway, Suite. 1802
New York, New York 10018
Telephone:     (212) 575-0202
Facsimile:     (212) 575-0233


Thomas Philip Puccio, Esq.
**LAW OFFICES OF THOMAS P. PUCCIO**
230 Park Avenue , Suite 301
New York, NY 10169
Telephone:     212-883-6383
Facsimile:     212-883-6388


*Attorneys for Defendant William F. Sorin*

**KRAMER LEVIN NAFTALIS
   & FRANKEL LLP**


_____

Yehudis Shalva Lewis, Esq.
Arthur H. Aufses, III, Esq.
Guilaine Senecal, Esq.
1177 Avenue of the Americas
New York, New York 10036
Telephone:     (212) 715-7538
Facsimile:     (212) 715-8000

*Attorneys for Defendants*
*John H. Friedman and Sam Oolie*


**BAKER BOTTS, LLP**


_____

Seth T. Taube, Esq.
30 Rockefeller Plaza - 44th Floor
New York, New York 10112
Telephone:     (212) 408-2655
Facsimile:     (212) 408-2501

*Attorneys for Defendant Ron Hiram*


52

**LAW OFFICES OF SOLOMON N. KLEIN**

---

Solomon N. Klein, Esq.
1410 Broadway, Suite. 1802
New York, New York 10018
Telephone:     (212) 575-0202
Facsimile:     (212) 575-0233

Thomas Philip Puccio, Esq.
**LAW OFFICES OF THOMAS P. PUCCIO**
230 Park Avenue , Suite 301
New York, NY 10169
Telephone:     212-883-6383
Facsimile:     212-883-6388

*Attorneys for Defendant William F. Sorin*

**KRAMER LEVIN NAFTALIS**
   **& FRANKEL LLP**

---

Yehudis Shalva Lewis, Esq.
Arthur H. Aufses, III, Esq.
Guilaine Senecal, Esq.
1177 Avenue of the Americas
New York, New York 10036
Telephone:     (212) 715-7538
Facsimile:     (212) 715-8000

*Attorneys for Defendants*
*John H. Friedman and Sam Oolie*

**BAKER BOTTS, LLP**

---

Seth T. Taube, Esq.
30 Rockefeller Plaza - 44th Floor
New York, New York 10112
Telephone:     (212) 408-2655
Facsimile:     (212) 408-2501

*Attorneys for Defendant Ron Hiram*

52

**LAW OFFICES OF SOLOMON N. KLEIN**

_____

Solomon N. Klein, Esq.
1410 Broadway, Suite. 1802
New York, New York 10018
Telephone:     (212) 575-0202
Facsimile:      (212) 575-0233

Thomas Philip Puccio, Esq.
**LAW OFFICES OF THOMAS P. PUCCIO**
230 Park Avenue , Suite 301
New York, NY 10169
Telephone:     212-883-6383
Facsimile:      212-883-6388

_Attorneys for Defendant William F. Sorin_

**KRAMER LEVIN NAFTALIS**
**& FRANKEL LLP**

_____

Yehudis Shalva Lewis, Esq.
Arthur H. Aufses, III, Esq.
Guilaine Senecal, Esq.
1177 Avenue of the Americas
New York, New York 10036
Telephone:     (212) 715-7538
Facsimile:      (212) 715-8000

_Attorneys for Defendants_
_John H. Friedman and Sam Oolie_

**BAKER BOTTS, LLP**

_____

Seth T. Taube, Esq.
30 Rockefeller Plaza - 44th Floor
New York, New York 10112
Telephone:     (212) 408-2655
Facsimile:      (212) 408-2501

_Attorneys for Defendant Ron Hiram_

52